# ·CHARLESTOWN.

## GARDNER, ET·AL. v. JOHNSTON, ET AL.

September 9, 1876.

A deed of trust held to be fraudulent and void, as to creditors, upon the facts stated in the opinion of the Court.

1876.
August Term.

|  |  |
|---|---|
| 9 | 403 |
| 36 | 395 |
| 9 | 403 |
| 43 | 327 |
| 9 | 403 |
| 44 | 168 |

Appeal from a decree of the circuit court of Jefferson ·county, pronounced on the thirteenth day of April, 1874, in a cause therein pending, wherein John W. 'Gardner, John Urton, and Francis Gardner were plaintiffs, and George W. Johnston, William H. Travers, T. W. Porterfield, David Johnston, Thomas Brown, John Roland, Randolph Custer, William Rissler, Hezekiah Colbert, Solomon Fleming, David Henderson, Joseph Duncan, and William Shaffer were defendants.

Appeal granted on the petition of said plaintiffs.

The facts of the case are set forth in the' opinion of this Court.

Hon. Joseph A. Chapline, Judge of said circuit court, presided at the hearing below.

*D. B. Lucas* for appellants.

*W. H. Travers* for appellees.

EDMISTON, JUDGE:

This is an appeal from a decree of the circuit court of Jefferson county, dismissing the bill of the plaintiffs,

1876.
August Term.

Gardner
v.
Johnston.

filed for the purpose of setting aside a deed of trust exe-cuted by the defendant, George W. Johnston, upon certain property, to secure the debts due from him to certain creditors named in said trust deed.

On the tenth day of February, 1869, the defendant, George W. Johnston, conveyed to William H. Travers, trustee, the following property : About twelve hundred bushels of wheat, red and white, about three hundred bushels of offal, forty bushels of corn, one hundred and sixty flour barrels, ten barrels of flour, seventy-five bags, one pair platform scales, two tons of plaster ; all of said articles being now in the mill at Halltown, Jefferson county, W. Va. Also, one dark brown horse named " Bill," saddle and bridle, one red and white spotted cow and calf; also, eight shoats; also, all my household and kitchen furniture, all of said property, being also at my residence, on the above-mentioned mill property, at Halltown, Jefferson county, West Va.; also, all my outstanding unpaid mill book accounts, for wheat, flour, or money yet due me in said milling business, at the above described mill.  In trust to secure the payment to my creditors hereinafter named, the amounts respectively due them, to be paid in the order in which they are herein mentioned, before the first day of July, 1870   (Here follows the debts); being amounts due said parties for wheat delivered and money used in said milling business, and for the benefit of whom, my mill assets and property are herein conveyed.   And if said debts are not all paid and satisfied on or before the first day of July, 1870, the said trustee is hereby authorized to sell, according to law, and apply the proceeds to the payment of said debts.

The deed was admitted to record on the day of its date, and was not known either to the trustee or any of the creditors, until after it was recorded.

On the fifth day of April, 1869, the plaintiffs and appellants instituted a suit in chancery, claiming that said deed of trust was fraudulent as to creditors.   They sued out an attachment and caused it to be levied upon

all the property that could be found, that was embraced in said deed. The plaintiffs charge in their bill, "that the trustee had no right to take possession of said property, or in any way to interfere with it, for more than sixteen months, but the same was to remain all that time in the possession of Johnston, and subject to his control; that almost all of said property, such as twelve hundred bushels of wheat, three hundred and fifty bushels of offal, is obviously of such a character that the said Johnston, when he executed said deed, could not have contemplated keeping such property in his possession for more than sixteen months, but that he must have designed selling the same; and that the pretense that it was to go into the hands of the trustee, after the expiration of more than sixteen months, for the payment of his debts, is palpably a scheme to delay, hinder and defraud his creditors, by continuing his milling business, disposing of the property conveyed in said deed according to his own will and pleasure, and contriving to use the proceeds in his business, while his creditors would be delayed and defrauded by the existence of said deed of trust."

The said Johnston and the trustee filed a joint answer, denying each and every allegation of fraud in the bill. The creditors answered, and denied any knowledge of any fraudulent purposes of the grantor, and asserted that their debts provided for in the trust, were just and honest.

David Johnston, the father of George W., had a debt of $650 provided for, and John Roland, the father-in-law, had a debt of $1,100 also provided for.

When the attachment was levied there were but 480 bushels of the wheat in the mill, but there were five hundred and fourteen bushels of offal, which was in excess of the amount in trust, a small deficiency in the corn, and no flour in the barrels. But the evidence showed that four hundred bushels of wheat had been ground into flour, and sent to Baltimore, and the money paid to the

1876.
August Term.

Gardner
v.
Johnston.

trustee, which was effected through the interposition of the trustee, but which had not been contemplated by the said Johnston, but to which he willingly assented when the trustee required it to be so, as he would have nothing to do with the trust, unless the grantor would consent to apply the property to the payment of the debts.

This conversation occurred between the grantor and trustee next day after the execution of the trust. One hundred bushels of wheat had been paid upon the rent that Johnston owed upon the mill; leaving two hundred and twenty bushels of the wheat unaccounted for. Johnston had agreed to pay the plaintiffs a short time before the execution of the trust, over two dollars a bushel for wheat, and it was for wheat that he owed them the debts for which they sued.

The plaintiffs proved, by an expert, "that there would have been great danger of loss and damage in keeping 1,200 bushels of wheat in a mill, unground, from the tenth of February, 1869, to the first of July, 1870;" weevil would be apt to get in it, and it would become musty. Corn and flour, with great care, might be kept possibly for that time, but it would be with great difficulty. Offal would must in that time. That it is advisable to close out wheat, on hand in February, by the following August or September. After that time, the flour made from such wheat would, most likely, be musty; some might not be.

Upon this state of facts, the circuit court dismissed the plaintiffs' bill, and from that decree they appealed to this court.

The case has been elaborately and ably argued here by both parties to the controversy. For the appellants, it is claimed, that from the character of the major part of the property, the circumstances attending the transaction, the conveyance should be declared void as to creditors. It is not denied but a debtor, in embarrassed circumstances, may execute a security by which he prefers cred-

itors, if done *bona fide.* This doctrine has been carried so far in Virginia, and that before our separation, with the right to make terms and reservations, that the court of appeals seem to concede that it should not be extended further, but think that the evil would justify legislative redress. See opinion of Allen, Judge, *Dance v. Seaman et als.,* 11 Gratt. 778. The question whether a deed shall be fraudulent *per se* has been presented to the court of appeals in many cases under different circumstances, but in no one under the circumstances attending this case.

In the same case, at page 781, Judge Allen says: "That the reservation of an interest in the property, by postponing the time of sale, or directing a sale on a credit, or providing for the payment of the surplus, after satisfying the creditors secured, do not, of themselves, furnish evidence of·fraudulent intent, has been affirmed by the repeated decisions of this Court. *Skipwith v. Cunningham,* 8 Leigh. 271 ; *Kevan v. Branch,* 1 Gratt. 274 ; *Lewis v. Caperton's exors.* 8 Gratt. 148 ; *Cochran v. Paris,* 11 Gratt. 348 ; *Janney v. Barnes,* 11 Leigh. 100.

Another class of cases are found, where the provisions contained in the deed are sufficient to enable the grantor to defeat the provisions, or the expressed object of the deed, in which the deed is held to be fraudulent *per se. Lang v. Lee,* 3 Ran. 431 ; *Sheppard v. Turpin,* 3 Gratt. 373 ; *Spence v. Bagwell,* 6 Gratt. 444 ; *Addington v. Etheridge,* 12 Gratt. This principle was acted upon, and approved by, this Court, in a case decided at the last term of this Court in Wheeling.

Many of the cases referred to above are such, as the the deed conveys real estate, and valuable and substantial personal property, or both, with some that is perishable, or destructible, or consumable in the use, in which case it has been claimed that, as the latter class of property was in the deed, with the reservation of the use of such property for a time sufficient to insure its destruction, or consumption by the grantor, therefore the deed

should be held void *per se*, but it will be found, in the class of cases first cited, that the court of appeals has overruled such pretensions, and sustained the deeds. This is, however, evidently upon the ground that the major part of the property is real and substantial, and the consumable property is the minor part.

No case has been presented to that court, where the major part of the property is such as can be consumed in the regular course of business, and will probably be so, in the time reserved by the grantor. The case that most nearly approaches that doctrine, or the facts in this, is *Cochran v. Paris*, 11 Grattan.

John Paris, by deed dated the thirtieth day of May, 1842, conveyed to Jacob K. Stribling, all the interest of Paris in twenty-one acres of land, which descended to his wife as one of the heirs of her father, that being his interest by the curtsy, three horses, one cow, two ploughs, one wheat screen, one bed, bedstead and furniture, plates, dishes, knives and forks, candlestick and snuffers, together with all other household and kitchen furniture belonging to the grantor; also all the crops of grain, including wheat, rye, corn, and oats, then growing on the land whereon he lived; upon trust that Paris should be permitted to remain in possession of the property until the thirtieth of May, 1844; and then if he made default in the payment of the two debts provided for, the trustee should sell.

The validity of this deed was attacked by Cochran, mainly on the ground that the reservation of the use of the property, a part of which was consumable, for the term specified in the deed, rendered it void on its face.

Judge Daniel in delivering the opinion of the court, says: "The fact that a deed of trust embraces articles which must perish, or be consumed in the use, before a sale of them can be made according to the terms of the deed, is not one which, of itself, necessarily shows the deed to have been made with a fraudulent design. The amount in number or value of such articles, may be so

inconsiderable as compared with the main subjects of the trusts, as to justify the conclusion that they were embraced, through inattention of the parties, to the inconsistency of providing a security out of property which, from its nature, would necessarily perish before it could be made available as a means of satisfying the trust. Or the deed may embrace other property, to the improvement, support or substance of which, such perishable property is essential; and in such last supposed case the fact that such perishable property is embraced in the deed, so far from being indicative of a fraudulent purpose, might rather serve to show an honest and provident design and effort to make the main subjects of the trust a more certain and productive security."

"The main objection to the deed is founded on the fact that it embraces growing crops of wheat, rye, corn, and oats, which the bill alleges would be severed and consumed before the trustee would, under the provisions of the deed, be at liberty to sell." "It seems to me that it would be a fair answer to this objection to say, that even if these crops were of such a nature that they could not be preserved till the day of sale, it would be harsh to construe the provisions of the deed in relation to them as designed merely to cover them from creditors; seeing that the deed also embraces a number of horses and a cow, to the sustenance of which, they would not, according to the testimony, probably be more than adequate. Besides we have no proof that these crops are of such a nature as necessarily to perish before the day of sale. On the other hand, common observation and experience prove that they may be preserved without material loss or deterioration, for a longer period."

" There is nothing, therefore, on the face of the deed to show that the property conveyed, was not designed by the parties to be a substantial and *bona fide* security for the debts, to secure the payment of which it was made."

It will be seen that the Court sustains this deed, because there is substantial, real and personal, property

1876.
August Term.

Gardner
v.
Johnston.

conveyed in the deed, and that the property consumable in the use, is not probably more, under the evidence,. than sufficient to sustain the live property, which will operate to the benefit of the creditor. What the court would have said, if the material and major part of the property had been of this perishable. character, may, it seems to me, be deduced from the argument to support. it on the reverse state of facts.

What are the material facts in the case before us? The debtor in embarrassed circumstances, the plaintiffs pressing and urging him for payment of their debts. He is. the rentor of a mill, and has purchased the twelve hundred bushels of wheat on credit, and for which he owes,. perhaps, every dollar. His lease has yet a year or two to run; he wishes to grind all he can, to make something out of the mill, but, being pressed by the plaintiffs, he draws on Baltimore houses, which owe him but little, and the orders are, unavailable, substantially, to the plaintiffs. Just at this juncture of time, he executes this. deed, by which he conveys this twelve hundred bushels of wheat, worth $2,500 in the mill, bought to be ground,. with the offal, and some corn, &c. with a horse, cow, and some household and kitchen furniture, to secure friends,. among whom were a father and a father-in-law, for more than one-half of the debts provided for. This property is not to be sold for over sixteen months, to-wit: from tenth of February, 1869, until first of July, 1870.

Here the material part of the property is such as the party had bought for the purpose of grinding in the mill he then had rented, so that he might be able to make the mill profitable under his lease; it was stored in the mill for that purpose, and the evidence in the cause shows that it was highly proper and judicious that it should be ground by the August or September ensuing the date of the trust, to avoid great loss on it. If he intended this as a *bona fide* security, for the payment of the debts in the deed of trust provided for, why did he not provide that the business should be carried on the

way that would promote both his interest and that of the trust creditors? This would have been by providing that the wheat should be ground, and that the trustee should market the flour, and apply the proceeds to the payment of the debts. Just as the trustee told him, he must agree to do, if he had anything to do with the trust, which he then assented to, but which he did not expect or desire to do, until the trustee insisted upon it. It seems to me, that no one can look at the provisions of this deed, accompanied by the surrounding circumstances, without concluding that it was the intention of the grantor to sell, and dispose of, the material part of this fund, and carry on his ordinary business the same as if he had not made the trust, and rely upon having the amount of property on the first of July, 1870, to surrender to the trustee. If this is so, then he had the power to defeat the provisions of the deed, and the creditors had nothing, in fact, to rely upon but the honesty and ability of the debtor to pay, and the deed amounts to no security at all.

It seems to me that the case is virtually within the principle of *Lang v. Lee*, and *Spence v. Bagwell*, and *Addington v. Etheridge*, cited above. In those cases, the vice in the deeds was express; here, it is only by necessary implication. This is, emphatically, a possession, with *jus disponendi*. The retention of possession of goods for proper purposes, is different from the retention of the property with the power, express or implied, to dispose of it for the grantor's own benefit. Such power is inconsistent with the character of the instrument, and is tantamount to a power of revocation. See Bump. on Fraud. Conveyance, pp. 161-2. If it is the will of the debtor to appropriate the property, he can do so; but if the mortgage be binding, then he cannot. The mortgagee has security only by the will of the debtor, not by the mortgage. He (the debtor) may dispose of the property, defeat the mortgage, and put the money in his pocket. If he refuses to pay his debts, and the property

is taken on execution, the mortgagee can step in and restore it to the debtor. Such an instrument is not operative between the parties. It is no security, so far as the debtor is concerned, and its only operation and effect, is to ward off creditors. It is, therefore, fraudulent and void. The terms of the deed must be express, or the implication must be a necessary one. Bump. 163.

I do not claim that the power of disposition is express in this case, but I do, that it is one of clear implication, and that, especially, when we look at all the circumstances that attend this transaction. That it was the purpose and intent of the grantor to dispose of this property, in the ordinary course of his business, no one can read this deed, and doubt. Thus it is also apparent, that it was the grantor's intention to cover up and protect this property from his creditors, and, at the same time, to carry on his ordinary business in defiance of them. A deed of this character, under such circumstances, must be made for the purpose of hindering, delaying, and defrauding, his general creditors, and must be void. In *Dance v. Seamon*, page 784, Judge Allen says: "As to the *cestuis que trust*, it is not pretended that they participated in any fraud. They were not consulted, and though, if the fraudulent intent clearly appeared on the face of the instrument, they would be affected by it if they claimed under it." So in this case, it is not claimed that the beneficiaries, under this deed, participated in any fraud; they were not consulted, but, as the vice appears on the face of the deed, and they claim under it, they are affected by it.

This view of the case may rather infringe upon the rules laid down in some of the Virginia cases, but I do not think it does. However, if so, I feel that the Virginia courts have gone very far in allowing grantors to express terms and make reservations, and this doctrine ought not to be extended, but courts had better halt than advance in that direction. The doctrine of the Virginia courts is in opposition to that of most of the other

1876.
August Term.

Gardner
v.
Johnston.

States whose decisions I have examined, especially Maryland, New York and Missouri.

In the case of *Cochran v. Paris* the opinion of Judge Daniel in support of the deed, rests upon the ground that the articles liable to be consumed in the use, afford but a small part of the security, and that, under the evidence in that case, their consumption would be necessary for the support and sustenance of the live property which afforded the material security; and also on the ground that there was no evidence that such articles as wheat, corn, rye and oats, in such small parcels on a farm could not be safely kept for the time prescribed in the deed; but that from common experience and observation, such property so situated, could be preserved for a longer time. In this case this reasoning does not apply, for it is proven that the wheat is the material security; that it is in bulk in the mill, and could not safely, be kept, for the time prescribed in this deed.

So, that it seems to me, we are not controlled by any express Virginia authority applicable to a case resting on such facts as this case does. And as it seems to me, upon the facts as presented in this case, it was a plain case of the grantor making this deed for the purpose of hindering, delaying and defrauding his creditors, and as the beneficiaries must see the facts which led to this result, the conveyance must be held to be void as to the other creditors.

I am, therefore, of opinion, that the decree of the circuit court is erroneous, and must be reversed with costs to the appellants.

And this Court proceeding to render such decree as the circuit court should have rendered, it is adjudged, ordered and decreed, that the deed of trust executed by George W. Johnston, on the tenth day of February 1869, to Wm. H. Travers, as trustee for the creditors therein named, is fraudulent and void, and is set aside as to the plaintiffs. And it is further adjudged, ordered and de-

creed, that the said George W. Johnston do pay to the plaintiff John W. Gardner, the sum of $1,052.75, with interest thereon from the twenty-fifth day of March, 1869, till paid; and that he also pay to the plaintiffs Francis Gardner and John Urton the sum of $492.12½, with interest thereon from the twenty-fifth day of March, 1869, till paid, and the costs expended by the plaintiffs in the prosecution of their suit in the circuit court, including $30 for an attorneys fee.

And it is further adjudged, ordered and decreed, that the officer who has in charge any of the property attached in this suit, do proceed to sell the same according to law, and that the proceeds of the sale of all the property levied upon by the attachments issued in this cause, whether heretofore or hereafter sold, be applied to the satisfaction of the decrees herein pronounced, according to the legal rights of the parties under their respective attachments.

And if there be any surplus after paying off and discharging the sums herein decreed to the plaintiffs, that the same be paid over to Wm. H. Travers, the trustee in said deed of trust, to be applied by him in payment of the debts contained in said trust according to the rights and priorities of such creditors.

And this cause is remanded to the circuit court of Jefferson county with instructions to enforce the provisions of this decree according to law.

The other Judges concurred.

DECREE REVERSED AND CAUSE REMANDED.