# WHEELING.

## LIVESAY'S EX'R *et al. v.* BEARD *et al.*

Submitted Janary 18, 1883—Decided November 17, 1883.

(*SNYDER, JUDGE, Absent.)

1. A deed of trust on lands and personal property with no definite fixed period, at which a sale could be required, and which puts it in the power of the grantor by collusion or otherwise to indefinitely postpone a sale thereunder, and puts all the live-stock conveyed by the deed and the increase thereof and all future crops to be raised from the land in the quiet enjoyment of the grantor, from which to support his family and pay the debts secured thereon as *he may deem* most advantageous, is fraudulent on its face and void.   (p. 590 )

2. Such deed being fraudulent on its face is void *in toto* and cannot stand as security for the debts therein attempted to be secured. (p. 592.)

3. Under a deed fraudulent on its face no valid act can be done to the prejudice of creditors not secured therein.   Whether there could be an innocent purchase of property under such a deed is not here decided.   (p. 592.)

4. Fraud may be legally inferred from the facts and circumstances of the case, when the facts and circumstances are of such a character as to reasonably lead to the conclusion, that the conveyance was made with the intent to hinder, delay and defraud creditors. (p. 593.)

5. Where the facts and circumstances in any case are such as to make a *prima facie* case of such fraudulent intent, they are to be

*Counsel below.

74

taken as conclusive evidence of such intent, unless rebutted by other facts and circumstances in the case. (p. 593.)

6. Although a deed may be made for a valuable and adequate consideration, yet if the intent of the grantor in making it be fraudulent, the deed will be void, if the grantee had notice of such intent. (p 593.)

7. When a debtor in failing circumstances conveys property for a grossly inadequate consideration, that is evidence of fraudulent intent. (p. 594 )

8. Where after an absolute conveyance of real estate by a debtor in failing circumstances he remains in possession of the land without contract and without accounting for the use of the land, these facts are evidence of fraudulent intent in such conveyance. (p. 594.)

9. Concurrent possession of both the grantor and grantee in an absolute deed after the conveyance is a badge of fraud. (p. 594.)

10. Where an insolvent debtor conveys his land even for a valuable though inadequate consideration with the secret reservation, that he shall for a time have the use of the land without payment of rent, this fact is evidence, that the conveyance was made with fraudulent intent. (p 594 )

11. If an insolvent debtor for an inadequate consideration conveys a valuable portion of his real estate to his children and others, and on the same day he makes a conveyance of other property to secure preferred creditors, which deed is fraudulent on its face, and four days thereafter makes a similar deed conveying all the residue of his property, which last deed is also fraudulent on its face, these facts taken together are strong evidence of a fraudulent intent in the execution of the first deed. (p. 594.)

12. A deed fraudulent in fact is void *in toto* and cannot stand as security for grantees who have notice of the fraud. (p. 595.)

13. A deed to several grantees jointly fraudulent in fact, it being proved that the grantor executed it with intent to defraud his creditors, will be void as to such grantees as had notice of the fraud, and may stand as security for the consideration paid by such grantees as had no notice of such fraud. (p. 596.)

The facts of the case appear in the opinion of the Court.

*Samuel Price, R. F. Dennis* and *John W. Harris* for appellants.

*A. C. Snyder* for appellees.

*Mathews & Mathews* for Dangerfield and others.

Johnson, President:

In February, 1871, William R. and Allen S. Livesay, executors of George Livesay, deceased, and Moses and Eli Mayer, partners comprising the late firm of M. & E. Mayer, all of whom were judgment-creditors of Andrew Beard, on behalf of themselves and all other judgment-creditors of said Beard, who might come into the suit and contribute to the payment of costs, filed their bill in the circuit court of Greenbrier county against Andrew Beard, Samuel S. Thompson, Leroy Dangerfield, Margaret V., his wife, S. Paulina Beard, Henry S. Pole, and Mary E., his wife, Julia C. Beard, Laura B. Beard, Joseph Beard, Samuel J. Beard, James Withrow in his own right and as trustee, and others.    The object of the bill was to attack as fraudulent three several deeds executed by Andrew Beard.

The first of these deeds, "Exhibit E," dated August 2, 1866, is to Margaret Virginia Dangerfield, Susan Paulina Beard, Mary Emaline Beard, Julia Caroline Beard, Laura Bell Beard and Samuel C. Beard conveying to them jointly for the alleged consideration of two thousand seven hundred and fifty-four dollars and seventy-five cents paid by M. V. Dangerfield, Susan Paulina and Mary E. Beard, two hundred dollars paid by Julia C. Beard and Laura B. Beard, one thousand eight hundred and thirty-six dollars and fifty cents paid by Joseph Beard, and two thousand five hundred and twenty-five dollars paid by Samuel C. Beard, the receipt of all which moneys is acknowledged in the deed, three several tracts of land, one of two hundred and three, another of two hundred and thirty and a third of one hundred and nineteen acres, all three tracts constituting and called the "home place."

The second, "Exhibit F," was executed on the same day, the 2d day of August, 1866, conveying sundry tracts of land and personal property to James Withrow, trustee, to secure John M. Brown, George Brown, B. F. Renick and Joseph J. Walkup sureties of said Beard, as the deed recites, in a certain bond executed to James Jarrett jr. on the 1st day of August, 1866, payable five years from October 17, 1866, for seven thousand three hundred and twenty dollars, with interest from the last mentioned date payable annually; and

also to secure Samuel C. Beard, Charles R. Hines, David S. Creigh, James H. Renick, B. F. Renick, John Stuart, and Stuart McClung, his sureties on his official bond as sheriff of Greenbrier county for the term which commenced January 1, 1859, and ended January 1, 1861.

The third, "Exhibit G," was executed on August 6, 1866, on the same real and personal property and some additional real property, to the same trustee, James Withrow, to indemnify Joseph Beard, Joseph J. Walkup, John Burr, James Withrow, and the estates of John A. North, deceased, Joseph Myles, deceased, T. B. Renick, deceased, and Robert M. Beard, deceased, for any loss, which the said parties or the said estates may sustain in consequence of the suretyship of the said parties "in the official bonds of said Andrew Beard, as sheriff of Greenbrier county, for the period from June 23, 1856, to July 1, 1859," and after reimbursing the above named sureties, any amounts, which may be paid by or recovered from them in consequence of said suretyship, then to pay all his debts in the order named in the deed.

Answers were filed, and depositions taken; and the cause was referred to a commissioner to ascertain the liens, debts, priorities, &c. The commissioner reported, that the liens and debts amounted to thirty thousand one hundred and ninety-five dollars and two cents.

By a decree rendered May 28, 1874, the court declared void as to creditors the first deed, "Exhibit E," to Virginia Dangerfield and others, but that it must stand as security for the actual amount of the indebtedness due from the grantor to the grantees, which was ascertained to be considerably less than the sum named as the consideration for the deed, and required that the grantees should account for rents and profits, while in possession. Deeds, "Exhibits F. and G," were by said decree declared to be null and void, as to the plaintiffs and other creditors of Andrew Beard, "*except that whatever was done by James Withrow, trustee, or others authorized by the deeds in the execution of the trust imposed by said deeds, in good faith, prior to the institution of this suit, shall be held valid.*" The principles decided in this decree were carried into two subsequent decrees; the one ordering the lands to be sold, rendered on November 11, 1874, and the other

rendered on June 17, 1875, confirming the sales made and distributing the proceeds thereof.

From these several decrees, the parties attempted to be secured in the two deeds of trust, "F" and "G," appealed, and here assign as error, and insist, that said decree of May 20, 1874, is erroneous, in that it declared the said two deeds of trust fraudulent and void.

According to the view we take of this cause it will only be necessary to enquire, whether said two deeds of trust are fraudulent on their face. The deed "F" contains this provision: "All the cattle, horses, sheep, hogs, and live stock of every kind, all wagons and farming utensils of every kind, all household and kitchen furniture, and all other personal property of every kind and description, of and belonging to the said party of the first part, together with all the rents, profits and crops, *present and future*, of and arising from and which may *hereafter* arise from the tracts of land herein conveyed, and all the future increase of the said cattle, horses, hogs, sheep, and other personal property capable of increase, *in trust*, that the party of the first part shall remain in quiet and peaceable possession and enjoyment of the property, both real and personal, herein conveyed, and use the same to support himself and family, and *as he* may deem most advantageous to pay off and discharge the debts, for which the said parties of the third part or any of them are liable; and upon the further trust, that whenever the said parties of the third part or either of them shall sustain any loss by the payment of any amount, for which there is at the time an execution upon a judgment obtained or a recovery had against them as sureties as aforesaid, or against the estate of the said David S. Creigh in consequence of the suretyship of the said Creigh as aforesaid, then, *in that event*, the said party of the second part at the request of *a majority in interest* of the said parties of the third part shall sell," &c.

The second trust-deed, "Exhibit G," contains the above provision, with the following additional one: "The said trustee shall at any time after the expiration of six years from this day, at the request of any creditor of the said Andrew Beard proceed to sell," &c., and, further: "Now if the said Andrew Beard shall pay off and discharge all his debts now

existing within six years, then this deed shall be void, other-wise shall remain in full force and virtue."

Counsel for appellants, insist that under the Virginia authorities these two trust-deeds, are valid on their face, and they cite, *Lewis* v. *Caperton,* 8 Gratt. 148; *Cochran* v. *Paris,* 11 Gratt. 348; *Dance* v. *Seaman,* 11 Gratt. 778; *Gordon* v. *Cannon,* 18 Gratt. 387; *Skipwith* v. *Cunningham,* 8 Leigh 271; *Janney* v. *Barnes,* 11 Leigh 100; *Kevan* v. *Branch,* 1 Gratt. 274; *Sipe* v. *Earman,* 26 Gratt. 563.

We have examined these cases and must say, that the Virginia court has gone very far indeed to sustain deeds as valid, which in other States would be declared *per se* fraudulent. In *Dance* v. *Seaman,* Allen P., said: "If the questions presented by the record in this case were of the first impression, it would be matter for grave consideration, whether deeds of trust, such as those assailed by the bill of the appellees, did not contravene the spirit of the statute against fraudulent conveyances; whether a deed of trust executed by a debtor on the verge of insolvency creating preferences amongst his creditors, postponing the time of sale, the possession in the meantime remaining with the grantor, and the profits to be received by him, and executed without the knowledge of or consultation with the creditors, should not be treated as made with a fraudulent intent, because the reservations and conditions may tend to hinder and delay creditors in the prosecution of their legal remedies to enforce the payment of their debts. But these questions have been settled by a series of adjudications in this court." He thinks the only remedy would be an act of the Legislature.

This Court in *Gardner* v. *Johnston,* 9 W. Va. 412, through Edmiston, J., said of these Virginia cases: "This view of the case may rather infringe upon the rules laid down in some of the Virginia cases, but I do not think it does. However, if so, I feel that the Virginia courts have gone very far in allowing grantors to express terms and make reservations; and this doctrine ought not to be extended, but courts would better halt than advance in that direction."

We are not disposed to go a whit further to sustain a deed of trust, in which the grantor has inserted, conditions and reservations tending to hinder and delay creditors in the col-

lection of their just demands, than the adjudicated cases compel us. But far as the Virginia court of appeals has gone in this direction, there is no case, that holds, principles, which would make either of the deeds we are now considering valid on their face; but courts both in Virginia and this State have held deeds with less objectionable features fraudulent and void on their face. *Lang* v. *Lee*, 3 Ran. 410; *Sheppards* v. *Turpin*, 3 Gratt. 373; *Spence* v. *Bagwell*, 6 Gratt. 444; *Addington* v. *Etheridge*, 12 Gratt. 436; *Garland* v. *Rives*, 4 Rand. 282; *Quarles* v. *Kerr*, 14 Gratt. 48; *Garden* v. *Bodwing*, 9 W. Va. 121; *Gardner* v. *Johnston*, 9 W. Va. 403; *Claflin* v. *Foley*, *supra*.

In these deeds there is no definite fixed period, when the lands could be subjected to the debts secured, and the residue of the proceeds of sale applied to the payment of unsecured creditors. The sale may be indefinitely posponed, by collusion between some of the creditors and the grantor, as it is provided in the first deed, "that whenever said parties of the third part, or any or either of them, shall sustain any loss by the payment of any amount, *for which there is at the time an execution* on a judgment obtained or recovery had against them," &c., "*then* in *that event* the said party of the second part, *at the request of a majority in interest* of the said parties of the third part, shall sell," &c. First, no sale can be had, unless one has suffered in a *peculiar* way, which by collusion might be prevented, and not then even could there be a sale, unless a *majority in interest* requested it. In none of the Virginia cases were there any crops reserved except the one then growing; in these deeds all future crops are included through an indefinite time. They convey all the live-stock with their increase, all the crops present and future, raised and to be raised on the lands conveyed, and then provide, that the grantor "shall remain in quiet and peaceable possession and enjoyment of the property both real and personal, and use the same to support himself and family, and as *he may deem* most advantageous pay off and discharge the debts, for which the said parties of the third part, or any of them, are liable." This certainly is a very close arrangement. If these deeds are held good, what possible chance have the unsecured and postponed creditors to have their

debts paid? Could not the grantor after supporting his family take the live-stock and its increase, all that was left of the crops raised from year to year to pay interest and part of the principal each year to a majority in interest of those secured, so that the time would never come, in consequence of such possible collusion, for a sale to take place.

I know it was said in argument, that the personal property was sold under execution. But this does not help the matter. The question is: Did the grantor by the deed *intend* to hinder, delay or defraud his creditors, or any of them? In deciding this question we have the right to look at either the provisions of the deed itself or the parol evidence or either or both. These two deeds are clearly fraudlent on their face, and the *cestuis que trust* having accepted their provisions had notice of the fraud and were participants therein. Being thus fraudulent the deeds are void *in toto*, and could not stand as security for the debts therein attempted to be secured. *Garland* v. *Rives*, 4 Rand. 310; *Henderson* v. *Hunton*, 26 Gratt. 926; *Tickner* v. *Wiswall*, 9 Ala. 305; *Mackie* v. *Cairns*, 5 Cow. 547.

What we have said clearly shows, that the appellants were not prejudiced by the decree, and if no error appears to the prejudice of the appellees, or any of them, the decrees would have to be affirmed. But, the appellees Livesay's executors, Jesse Bennett and Ann Jackson, assign error to their prejudice and ask to have the decrees reversed. They insist, that the court in its decree of May 28, 1874, erred in holding, that, while the said deeds, "F" and "G," were void, as to creditors, yet that, "whatever was done by James Withrow, trustee, or others, authorized by the deeds in the execution of the trust imposed by said deeds in good faith prior to the institution of this suit shall be held valid." This is manifest error. It lays down a principle that would in certain cases make but little difference between a good and void deed. It the deeds were void, those, to secure whom they were made, certainly could obtain no benefit therefrom. If moneys were paid out by the trustee or grantor from receipts, either from farms or personal property or from proceeds of sales under said void trust-deeds to any of the parties attempted to be preferred and secured under said deeds, and the deeds are

void, of course the circuit court must cause said parties to pay such money with its interest into court to be distributed to those who are entitled under the law to receive it. And the deeds being void, the creditors under said deeds, if said deeds were their only security, would be postponed to others having under such circumstances a prior right to be paid.

It does not appear whether there are any innocent purchasers of said property under said trust prior to the institution of this suit. Whether a purchaser, who takes title under a sale made by authority of a deed fraudulent on its face, can be under any circumstances an innocent purchaser, we will not decide in this case. It is not asked by appellees, that any such sales shall be disturbed; but, if the proceeds thereof went to any of the parties, who were named as beneficiaries in said trust-deeds, they ask that said parties be required to pay such money with its interest into court to be properly distributed. This must be done, and will necessitate re-stating the account.

The appellees, M. V. Dangerfield and the other grantees in deed "E" complain that the deed to them was held void as to creditors, notwithstanding it was permitted to stand as security for the several amounts, in which the grantor was indebted to the several grantees. Did the court err to the prejudice of these appellees? This depends upon whether or not the deed was fraudulent in fact, and whether or not the grantees had notice of the fraud. The principles to be applied in ascertaining whether the deed was fraudulent in fact are well settled. While it is true that fraud is never presumed, yet it may be inferred from circumstances. Fraud may be legally inferred from the facts and circumstances of the case, when such facts and circumstances are of such a character as to lead a reasonable man to the conclusion, that the conveyance was made with the intent to hinder, delay or defraud creditors. When the facts and circumstances in any case are such as to make a *prima facie* case of such fraudulent intent, they are to be taken as conclusive evidence of such intent, unless rebutted by other facts and circumstances in the case. Although a deed be made for a valuable and adequate consideration, yet if the *intent* with which the grantor made be fraudulent, the deed will be void, if the

grantee had notice of such intent. *Lockhard & Ireland* v. *Beckley*, 10 W. Va. 87; *Hunter* v. *Hunter, Id.* 321; *Rose* v. *Brown*, 11 *Id.* 134; *Martin* v. *Rexroad*, 15 *Id.* 512; *Goshorn*, v. *Snodgrass*, 17 *Id.* 717; *Harden* v. *Wagnor, supra*; *Claflin* v. *Foley, supra*; *Hudgins* v. *Kemp*, 20 How. 45; *Wright* v. *Hencock*, 3 Munf. 521; *Briscoe* v. *Clark*, 1 Rand. 213; *Spence* v. *Bagwell*, 6 Gratt. 444.

Where a debtor in failing circumstances conveys property for a grossly inadequate consideration, this is evidence of fraudulent intent. *Amos* v. *Gilmore*, 59 Mo. 537; *Bryant* v. *Kelton*, 1 Tex. 415; *Hamet* v. *Dundass*, 4 Penn. St. 178. Where after a conveyance of real estate by a debtor in failing circumstances, he remains in possession of the land without contract and without accounting for the use of the land, these facts are evidence of fraudulent intent in such conveyance. *Curd* v. *Miller*, 7 Gratt. 185; *Peck* v. *Land*, 2 Ga. 1; *Perkins* v. *Patten*, 10 Ga. 241; *Davis* v. *Turner*, 4 Gratt. 422; *King* v. *Moon*, 42 Mo. 551. Concurrent possession of both the grantor and the grantee after the conveyance is a badge of fraud. (*Stadtler* v. *Wood*, 24 Tex. 622.) Where an insolvent debtor conveys his land even for a valuable though inadequate consideration with the secret reservation, that he shall for a time have the use of the land without payment of rent, this fact is evidence that the conveyance was made with fraudulent intent. (*Sidensparker* v. *Sidensparker*, 52 Me. 481.) If an insolvent debtor for an inadequate consideration conveys a valuable portion of his real estate to his children and others, and on the same day he makes a deed for other property to secure preferred creditors, which deed is fraudulent on its face, and four days thereafter he makes a similar deed conveying all the residue of his property, which last deed is also fraudulent on its face, these facts taken together are strong evidence of a fraudulent intent in the execution of the first deed.

Now how stands this case as to deed "E"? At the time it was made, the whole of the grantee's property would not pay half of his debts; he was hopelessly insolvent. Suits had already been brought and judgments threatened. Many years before the deed was executed he received money which belonged to his daughters and nieces, who are grantees in

said deed. He calculated the debts he owed to them at *compound* interest, making the debt much greater than it really was. He was not the guardian for the children, although he was the father of some of them. The court below correctly decided, that he was not liable for compound interest on the debts. The residue of the consideration for said deed was certain debts he owed Samuel C. Beard and Joseph Beard. The real consideration for the deed, actual debts which he owed, amounted to something over six thousand dollars; and the consideration expressed is over seven thousand dollars. The land was worth according to the testimony about nine thousand dollars or about fifty per cent. more than the debts which he owed the grantees; he conveyed it to them jointly, not specifying what interest each should hold in the land; and under the law, if the deed were valid, they would be entitled to hold in equal proportions. (*Jarrett* v. *Johnston*, 11 Gratt. 327.) From all the facts and circumstances in the case it was evidently understood, at least between himself and the grantees Joseph and S. C. Beard, that he and his family should still occupy the land, he taking the rents and profits to himself. It also appears, that on the same day the said deed "E" was executed, he also executed deed "F" and four days thereafter deed "G," which two last deeds we have already decided were fraudulent on their face. Thus within four days by these deeds he divested himself of his entire property, except that he reserved a living for himself and family. All three deeds seem to our minds to constitute one fraudlent scheme to hinder, delay and defraud his creditors. The deed "E," for the reason aforesaid, was fraudulent in fact; it was executed with the manifest intent to hinder, delay and defraud his creditors. Therefore the appellees, the grantees in said deed, have no ground to complain of said decrees, as they are not prejudiced thereby.

But the appellees, Livesay's executors, Jesse Bennett and Ann Jackson, by their assignment of errors, ask the reversal of said decrees, because the court held, that said deed should stand as security for the actual amount of the indebtedness of the grantor to each of the grantees. If the grantees had notice of the fraud of the grantor, then the deed is void *in*

*toto,* and cannot stand as security for anything. And if any of the grantees had notice of the fraud of the grantor in the execution of such deed, as to such grantee it is *void in toto* and cannot stand as security for any debt, which the grantor may have owed to him. Some of the grantees in a fraudulent deed may be protected and others not, it may be good as to such grantees, as had no notice of the fraud, and void as to those, who had such notice. Did any of the grantees have notice of the fraud? In *Green* v. *Tantum,* 19 N. J. Eq. 105, it is held, that although a purchaser of property transferred by a debtor to defraud his creditors pay full consideration and have no notice, that the property is transferred to him for that purpose, yet if the circumstances are such, from which he must have inferred, that such was the object, the sale will be set aside as against a creditor. The chancellor said on page 109:

"If his brother intended fraud, and he was innocent of it, and paid the consideration for the transfers in good faith without knowledge of such intent, his title cannot be injured by his brother's fraudulent intent. Joseph R. Tatum in his answer swears that he paid the full amount due on those mortgages, with about three hundred and fifty dollars, allowed for the horse and wagon, amounting to the sum of five thousand five hundred and three dollars and sixteen cents. His answer in this is directly responsive to the bill, is uncontradicted, and there are no circumstances in the case sufficient to overcome it; it must be taken as true. The answer denies the statement and charge of said bill, that he had full knowledge, or any knowledge, of the purpose of the said John A. Tatum to defraud the complainant, and that he colluded with him to effect any fraudulent purpose. It also denies that the assignments were taken with any intent on his part of defrauding the complainant or to prevent the collection of such judgment. This is a direct denial of the fraud, on his part, or any knowledge of the fraudulent intent of his brother in making the transfer. But his answer admits knowledge of the pendency of the suit, that he was informed by his brother of the verdict given on the 7th of December, that his brother came to his house on the 8th of December with assignments executed and acknowledged,

and these assignments were accepted and paid for, and sent to, and received at the clerk's office at Camden on the 10th."

Notwithstanding the positive denial of knowledge of the fraudulent intent of his brother the court from all the circumstances of the case charged him with such knowledge and declared he had notice of the fraud, on the ground that a person is to be charged with notice, when he is acquainted with circumstances sufficient to convince a court of the truth of the fact.

The circumstances here show, that Joseph Beard and S. C. Beard had means of knowing the financial condition of their relative, Andrew Beard; that they knew, that the consideration of the deed was inadequate; that they knew, that in order to make the consideration as large as it was, a part of the debt was made up of compound interest. Joseph Beard in his deposition says: "The daughters of John Beard were paid off in full, and I assumed the payment of the legacies to my daughters, which was one thousand six hundred and ten dollars and five cents, for which Andrew Beard executed to me his note, which was dated at about the time of the execution of said deed, as well as I recollect." Again in his second deposition he says in answer to the question: What was the consideration for the deed, as far as he was concerned?

"In 1866 Andrew Beard asked me to become paymaster for this debt to my daughters, and I assumed the debt to them; and Andrew Beard owed it to me, and for this debt conveyed to me a portion of his home-property, or rather an interest in it. The debt referred to, for which this conveyance was made, was put in the deed at the sum, to which the original debt amounted at compound interest—I believe one thousand eight hundred dollars. In 1856 Andrew Beard had executed to me his bond for this debt, then amounting to some one thousand dollars, and in estimating what Andrew Beard owed me in my former deposition in this cause I calculated it at simple interest from 1856, making in this way one thousand six hundred dollars or about that sum; but he in drawing the deed as stated put it at the sum, to which it amounted at compound interest. This bond in

1856 was given to me as guardian for my daughters for their benefit." He knew that the debt was nearly two hundred dollars more than it should have been, yet he claimed the benefit of it. And when a deed was about to be executed, he takes a note for principal and interest. Why did he do this? Why did he not give Beard a receipt?

Samuel C. Beard, in his deposition says, that he is one of the grantees in said deed, that he paid to Andrew Beard the said sum of two thousand five hundred and twenty-five dollars as stated in said deed for the interest in said land conveyed to him, "the payment was made in the shape of *bonds now in my possession,* which I had lifted for Andrew Beard, and an account for medical services, &c., the items and amount of which I do not now recollect having but my memorandum of it." * * * "I was raised on an adjoining farm to said lands and ought to know them. At the time said deed was made, I had a conversation with A. Beard as to the value of said lands embraced in the deed, and I thought them to be worth from eight thousand dollars to ten thousand dollars." Here he admits he conversed with Beard, the grantor, at the time the deed was executed, knew that the lands were worth a great deal more than the debts, for which the conveyance was made; has in his possession the evidence of the debts, which were paid by the conveyance. I think there can be no doubt from all the facts and circumstances in this case, that both Samuel C. Beard and Joseph Beard had notice of the fraudulent intent of the grantor in the execution of said deed, and that as to them it could not stand as a security for the consideration paid by them or either of them, and that the moneys, which they and each of them have received from the proceeds of the sale of said tract of land known and designated as the "home place" together with the interest thereon must be paid into court, to be distributed to those, who are legally entitled to receive the same; and this the circuit court of Greenbrier county must cause to be done.

Mrs. Dangerfield was not living at home. There is no evidence, that any of the other grantees in said deed had notice of the fraud of the grantor. The infant defendants were incapable of making a contract, and no notice of fraud

can be charged to them ; and the said infant defendants and the other grantees in said deed, other than Joseph and S. C. Beard, not being charged with notice of the fraud, and the deed being made jointly to all the grantees therein and being fraudulent as to the grantees S. C. and Joseph Beard, it would have to be set aside as to the creditors, but could properly stand as security for the debts due the infant grantees therein.

So far as the said decree of May 28, 1874, declared, that said deed "E" must be set aside as to creditors, and stand as security for the debts of grantees therein named, and specified as the consideration therefor to the true amount thereof it is affirmed as to all said grantees other than Joseph and S. C. Beard ; and so far as it declares void as to creditors the said deeds, "F" and "G," it is also affirmed ; but so far as it declares that deed "E" shall stand as security for the consideration therein as to Joseph Beard and S. C. Beard, and so far as it declares, that whatever was done by the trustees and others under deeds "F" and "G" before the institution of this suit was valid and binding, is reversed with costs to the appellee, Livesay's executors, Jesse Bennett and Ann Jackson ; and, so much of the decrees of October 20, 1874, and June 17, 1875, as carries into effect the errors pointed out in the decree of May 28, 1874, is reversed, and in all other respects is affirmed. The order of sales and rentals, and the confirmations of sales and rentals are affirmed. Of course a new account will have to be taken, and the cause must proceed according to the principles herein announced.

JUDGES GREEN AND WOODS CONCURRED.

AFFIRMED IN PART. REVERSED IN PART. REMANDED.