**UNITED STATES of America,
Plaintiff,**

v.

**Dr. Francis J. WHELAN,
et al., Defendants.**

Civil Action No. 5:06–cv–00388.

United States District Court,
S.D. West Virginia,
Beckley Division.

March 3, 2008.

Gary L. Call, U.S. Attorney's Office, Charleston, WV, Pat S. Genis, U.S. Department of Justice, Washington, DC, for Plaintiff.

David Whelan, Corrine, WV, pro se.

## MEMORANDUM OPINION

THOMAS E. JOHNSTON, District Judge.

Pending before the Court is the United States' Motion for Summary Judgment [Docket 34]. This matter is before the Court on the United States' Complaint for Federal Taxes [Docket 1], wherein the United States seeks to recover unpaid taxes from Dr. Francis J. Whelan by foreclosing on a parcel of real property in Wyoming County, West Virginia. The action originally named as defendants Dr. Whelan, his three sons, Joseph, David, and Benjamin Whelan, and Ronnie and Wilma Barker, who allegedly had an interest in the real property at issue. Since then, Dr. Whelan has passed away and his son Benjamin, the personal representative of his estate, has been substituted as a party defendant.[1] Further, the Barkers have relinquished their interest in the property and been dismissed from the case. (Docket 32 at 1.) Discovery has closed, and the parties agreed to resolve the case on summary judgment. (Docket 29 ¶¶ 7–10.) For the reasons set forth below, the United States' Motion for Summary Judgment [Docket 34] is **GRANTED IN PART** and **DENIED IN PART.**

---

1. In the United States' memorandum of law in support of its motion to amend, the United States asserts that it was notified by Dr. Whelan's attorney via a "Notice of Suggestion of Death" that Dr. Whelan had died "on or about December 11, 2005." (Docket 20 at 2.) Curiously, Dr. Whelan filed a notarized *pro se* Answer [Docket 6] on July 5, 2006, nearly six months after his alleged passing.

## I. BACKGROUND

The material facts are not in dispute. The United States filed the instant lawsuit on May 19, 2006, seeking to recover unpaid income and trust fund taxes from Dr. Francis J. Whelan assessed between May 27, 1996, and December 5, 2005. To recover these unpaid taxes, the United States asks the Court to foreclose on a parcel of real property commonly known as 8 Hylton Road, Corrinne, West Virginia. The property is described in a deed filed with the Recorder of Deeds for Wyoming County, West Virginia, as follows:

BEGINNING at an 1–1/4″ pipe near a fire plug, on the western right-of-way of Mack Hylton Drive, a common corner with Hubert McKinney, and thence with the Hubert McKinney line S 55° 31′ W 191.50′ to an iron pin; thence, leaving the Hubert McKinney line N 35° 37′ 21″ W 558.61′ to a point near the center line of a hollow; thence, up the hollow N 67° 44′ E 368.40′ passing through a lead plug and a tack in a boulder near the center line of the hollow at 97.48, to a point on the western right-of-way of Mack Hylton Drive; thence, with said right-of-way to a point; thence S 10° 03′ E 6.21′ to a point; thence S 1° 01′ E 204.86′ to a point; thence S 19° 10′ E 149.12′ to a point; thence, S 34° 02′ E 148.26′ to a point; thence, S 27° 59′ E 12.00′ to the point of beginning and containing 2.97 acres.

The United States assessed income taxes, interest, and penalties against Dr. Francis J. Whelan in the following amounts: on May 27, 1996, the United States assessed $78,776.25 for the 1995 tax period; on October 1, 2001, the United States assessed $30,559.36 for the 2000 tax period; on September 30, 2002, the United States assessed $33,619.15 for the 2001 tax period; on October 6, 2003, the United States assessed $26,738.34 for the 2002 tax period; and on January 10, 2005, the United States assessed $19,702.48 for the 2003 tax period. A Notice of Lien for each assessment was properly filed with the Clerk of the County Commission in Wyoming County, West Virginia. As of February 20, 2006, Dr. Whelan owed the United States a total of $308,321.02 for these unpaid taxes.

The United States also assessed unpaid trust fund taxes related to Dr. Whelan's business, Whelan Medical Clinic, Inc., in the following amounts: on June 25, 1999, the United States assessed $42,514.72 for the tax period ending June 30, 1998; on December 5, 2005, the United States assessed $3,353.29 for the tax period ending June 30, 2002; on December 5, 2005, the United States assessed $8,840.51 for the tax period ending December 31, 2002; on December 5, 2005, the United States assessed $5,062.58 for the tax period ending March 31, 2003; on December 5, 2005, the United States assessed $4,543.39 for the tax period ending June 30, 2003; on December 5, 2005, the United States assessed $5,506.12 for the tax period ending September 30, 2003; on December 5, 2005, the United States assessed $5,566.89 for the tax period ending March 31, 2004; on December 5, 2005, the United States assessed $5,091.15 for the tax period ending June 30, 2004; and on December 5, 2005, the United States assessed $4,248.31 for the tax period ending September 30, 2004. A Notice of Lien for each assessment was properly filed with the Clerk of the County Commission in Wyoming County, West Virginia. As of February 20, 2006, Dr. Whelan owed the United States a total of $104,127.73 for these unpaid taxes.

Neither Dr. Whelan nor his sons dispute the validity of these tax liens. In their response[2] to the United States' summary

---

**2.** The filing is styled as a "Motion for Summary Judgment of Validity of Promissory

judgment motion, however, Joseph, David, and Benjamin Whelan assert that any lien by the United States should be subject to a series of promissory notes negotiated to them by Dr. Whelan on January 1, 1992, and secured by an interest in the 8 Hylton Road property by a Deed of Trust filed on February 21, 1996. These notes represent the purported obligation of Dr. Whelan to pay upon demand to Benjamin Whelan the sum of $13,394.00; to Joseph Whelan the sum of $12,631.00; and to David Whelan the sum of $15,603. According to Benjamin Whelan, Dr. Whelan gave the promissory notes to his sons in consideration for work they did for him throughout his life. (Docket 36–7 at 21.) In its summary judgment motion, however, the United States asserts that the promissory notes are "fraudulent and void" because "[n]one of the sons provided adequate consideration," (Docket 35 at 5), and because Dr. Whelan attempted to transfer an interest in the property in order to defeat creditors.[3] (*Id.* at 6.) The validity of these promissory notes and their effect on any judgment obtained by the United States is a legal question that will be resolved below. Thus, the matter is ripe for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Celo-*

*tex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When construing such factual issues, it is well established that the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. 2548. Even undisputed facts may give rise to multiple inferences, however, "[o]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

---

Notes," however, given that it was filed two days after the United States' summary judgment motion, the Court will treat it as a response to that motion.

**3.** Dr. Whelan's ex-wife had a judgment pending against him in the amount of $78,519.43. (Docket 36–8 at 29.) On July 20, 1995, in an attempt to collect that judgment, she filed a

copy of that judgment with the Office of the Circuit Clerk of Raleigh County, West Virginia, and obtained a lien on a parcel of real property owned by Dr. Whelan that is not the subject of the instant litigation. (*Cf. id.* at 30.) Benjamin Whelan admits, however, that Dr. Whelan negotiated the promissory notes in response to the judgment obtained by his ex-wife. (Docket 36–7 at 21.)

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. 2505. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

## III. ANALYSIS

### A. Jurisdiction

The United States brought this action, pursuant to 26 U.S.C. §§ 7401 and 7403, at the request, and under the direction, of the Chief Counsel for the Internal Revenue Service. Therefore, jurisdiction in this Court is proper under 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. § 7402. "All persons having liens upon or claiming any interest in" the 8 Hylton Road property have been joined as parties pursuant to 26 U.S.C. § 7403(b).

### B. Validity of United States' Tax Lien

■■■ "The [Tax] Commissioner's determination of tax liability is presumptively correct[.]" *United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir.1980) (citing *Psaty v. United States*, 442 F.2d 1154 (3 Cir.1971)). To establish a prima facie case of tax liability, the United States must only "introduce[ ] into evidence the certified copies of the certificates of assessment." *Pomponio*, 635 F.2d at 296 (citing *Psaty*, 442 F.2d at 1154). Once the United States establishes a prima facie case, the burden shifts to Defendants to prove that the Tax Commissioner's determination was erroneous, that Defendants were not "responsible persons" under the Tax Code, or that the failure to pay the tax was not willful.

*Pomponio*, 635 F.2d at 296 (citations omitted).

■■■ In this case, the United States has filed certified transcripts of Dr. Whelan's federal income tax accounts for tax years 1995, 2000, 2001, 2002, and 2003. (Docket 36 ex. 1–5.) The United States has also filed certified transcripts of Dr. Whelan's trust fund tax accounts for periods ending June 30, 1998; June 30 and December 31, 2002; March 31, June 30, and September 30, 2003; and March 31, June 30, and September 30, 2004. (*Id.* ex.6–14.) Finally the United States has filed a Notice of Lien for each of the above-listed periods. (*Id.* ex.17–21.) Thus, the United States has established a prima facie case of tax liability against Dr. Whelan's estate.

■■■ Defendants do not dispute that Dr. Whelan owes these taxes. (Docket 5 at 2; Docket 8 at 1; Docket 11 at 1.) In fact, Dr. Whelan admits that he owes the alleged amounts and "apolog[izes] to the United States of America and the Internal Revenue Service for having incompletely paid the taxes noted in this complaint." (Docket 6 at 1–2.) Because Defendants do not dispute Dr. Whelan's failure to pay the taxes, the United States has an automatic lien "upon all property and rights to property, whether real or personal, belonging to [Dr. Whelan]." 26 U.S.C. § 6321. The lien continues until the assessed amount is satisfied or otherwise becomes unenforceable, 26 U.S.C. § 6322, and attaches to the taxpayer's equity interest in the property. *Cardinal v. United States*, 26 F.3d 48, 49 (6th Cir.1994). "The value of the equity interest depends on the fair market value of the property and is measured by reducing the fair market value of the property by . . . any liens superior to the federal tax lien[.]" *Id.* (citations omitted). Therefore, the Court **FINDS** that the United States has a valid lien on the 8 Hylton Road property in the amount of the fair market

value of the property, less the value of any superior liens, and accordingly **GRANTS IN PART** the United States' motion for summary judgment on this issue.

### C. Validity of the Promissory Notes

■ In their response to the United States' summary judgment motion, Defendants ask the Court to rule that the promissory notes given to them by Dr. Whelan on January 1, 1992, are valid and, by virtue of the Deed of Trust filed on February 21, 1996 securing payment on those notes, that they take priority over any tax lien by the United States. (Docket 37 at 1.) In West Virginia, a note qualifies as a negotiable instrument if it:

> (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) Is payable on demand or at a definite time; and
>
> (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (I) an undertaking or power to give, maintain or protect collateral to secure payment. . . .

W. Va.Code § 46–3–104(a); *see also* § 46–3–104(a) cmt. 1. The promissory notes at issue here meet this definition. They are signed by Dr. Whelan and represent his unconditional promise to pay a fixed amount of money, payable individually to Dr. Whelan's sons, upon demand, and do not state any other undertaking or instruction other than the securing of payment by deed of trust. (Docket 37 at 2–4.) Thus, the notes at issue here are facially valid and, as holders of the notes, W. Va.Code § 46–1–201(b)(21), Dr. Whelan's sons are entitled to enforce them. *Id.* § 46–3–301.

■ The United States seeks to void Dr. Whelan's transfer of part of his interest in the 8 Hylton Road property based on West Virginia's fraudulent conveyance law. *See Comm'r v. Stern,* 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958) (applying state law to determine creditor's rights in tax case). In its brief, the United States argues that the original promissory notes are void under West Virginia's fraudulent conveyance statute because Dr. Whelan transferred his interest in the property either (1) with the actual intent to defraud creditors or (2) because he believed he was about to incur debts beyond his means and did not receive adequate consideration for the notes. *See* W. Va.Code § 40–1A–4. Because it is the party alleging fraud, the United States bears the burden of proof. *Bd. of Trustees v. Blair,* 22 W.Va. 585, 593 (1883).

■ The United States has neither argued nor put forth evidence to show that Dr. Whelan actually intended to defraud creditors, rather, the United States alleges only that he attempted to transfer his interest for little or no consideration because he believed he was about to incur debts beyond his means. In support of this allegation, the United States asserts that Dr. Whelan "had a judgment pending against him for more than $70,000," and that "all three sons admit that they gave their father no money in exchange for the purported transfer of the 8 Hylton Road property." (Docket 35 at 5.) Both of these assertions are true, however, they do not amount to an attempt by Dr. Whelan to defraud his creditors.

In support of its position, the United States cites an unpublished case from the Northern District of West Virginia where the court voided the transfer of a deed based on West Virginia's fraudulent conveyance statute. *See United States v. Brown,* No. 79–0190–E, 1981 WL 1815 (N.D.W.Va. May 20, 1981). In that case, a taxpayer transferred the deed to his home to his minor daughters for no consider-

ation. *Id.* at \*2. He then continued to live in, maintain, and pay taxes on the house. *Id.* The taxpayer was also an experienced attorney who was, at the time, being prosecuted for bribing public officials and was likely to incur substantial legal fees and fines. *Id.* at \*3. More importantly, he knew that if he transferred the deed to his daughters, the government could not foreclose on the house to recoup any fines. *Id.* The court determined that these factors, taken together as "badges of fraud," established a *prima facie* case of the taxpayer's fraudulent intent. *Id.* at \*4.

Like the taxpayer in *Brown,* Dr. Whelan's transfer of interest in the subject property was to members of his immediate family. The similarities, however, end there. Unlike the transfer in *Brown,* the transfer in the instant case was for consideration; Dr. Whelan negotiated the promissory notes on January 1, 1992 as payment for services his sons performed for him throughout the years. Unlike the property in *Brown,* the property was not subjected to a lien at the time of transfer; the $70,000 judgment lien is on a separate piece of property and was not obtained by Dr. Whelan's ex-wife, Elizabeth Palmer, until December 5, 1994, nearly three years after the transfer. Finally, unlike the taxpayer in *Brown,* Dr. Whelan did not transfer all of his rights in the property, rather, he executed a deed of trust to secure payment on the promissory notes. Thus, his continuing residence at the property is of no significance. Because Dr. Whelan transferred the interest in his property to secure payment on promissory notes which he had issued in consideration for services rendered by his sons and at a time when the property was free of other liens, the Court finds that the transfer was not fraudulent under West Virginia's fraudulent conveyance statute, W. Va.Code § 40–1A–4.

To the extent that the United States argues that the value of the notes exceeded the value of any services rendered, such an argument is not supported by the case law. In one case where a party attempted to void the transfer, via promissory note, of an interest in real property, the West Virginia Supreme Court of Appeals held that:

A promissory note given to a near relative, by a person in declining years, by way of compensation or reward for services rendered and to be rendered, is so much in the nature of a testamentary disposition of property that ordinarily the maker's estimate of the value of the services will not be disturbed on the ground of disparity between the actual value thereof and the amount of the note.

Syl. pt. 5, *Bade v. Feay,* 61 S.E. 348, 63 W.Va. 166 (1908). Thus, even if the value of Defendants' services was not equal to the amounts stated in the promissory notes, the transfer is still valid because the transfer is in the nature of a testamentary gift. Accordingly, the Court **FINDS** that Defendants' promissory notes and resulting liens are valid, and the United States' motion for summary judgment is **DENIED IN PART** as to this issue.

### D. Priority

■ Having determined that Defendants' promissory notes are valid and enforceable, the Court must now determine which liens have priority. 26 U.S.C. § 7403(c). It is well-settled that "the first in time is the first in right." *United States v. City of New Britain, Conn.,* 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954) (quotations omitted). Defendants' liens were placed on the property on February 21, 1996, long before any of the United States' tax liens, thus, Defendants' liens will be first satisfied from the sale proceeds and tax liens will be satisfied by

the balance. *See Washington v. United States,* 402 F.2d 3, 7 (4th Cir.1968). Among Defendants' liens, which were all secured by the deed of trust filed on February 21, 1996, the deed states that, "If more than one obligation, or note, is secured under this Deed of Trust, the beneficiaries hereunder shall decide the priority thereof, unless priority is stated herein." (Docket 36–6 at 1.) Because the deed does not specify priority, Defendants are charged with determining priority among themselves.

### E. Foreclosure

Because Defendants do not dispute the validity of the United States' tax assessments, the United States has a lien against all of Dr. Whelan's real and personal property, which remains in effect "until the taxpayer's liability 'is satisfied or becomes unenforceable by reason of lapse of time.'" 26 U.S.C. § 6322. Pursuant to 26 U.S.C. § 7403, the Court may order a sale of the property to satisfy the lien, so long as all persons "'having liens upon or claiming any interest in the property'" are joined as parties to the suit. *United States v. Rodgers,* 461 U.S. 677, 690–93, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) (quoting 26 U.S.C. § 7403). After the sale, the Court may order "'a distribution of the proceeds of such sale according to the findings of the [C]ourt in respect to the interest of the parties and of the United States.'" *Id.* at 693–94, 103 S.Ct. 2132 (quoting § 7403(c)). "Innocent third parties[, such as Defendants here,] thus receive compensation for the sale of their interests." *United States v. Hopkins,* 859 F.Supp. 208, 212 (S.D.W.Va.1994) (Copenhaver, J.) (citing *Rodgers,* 461 U.S. at 693–94, 103 S.Ct. 2132).

### IV. CONCLUSION

Based on the foregoing, the Court **FINDS** that the United States has valid tax liens on the 8 Hylton Road property in the amounts of $308,321.02, plus interest, for Dr. Whelan's unpaid federal income taxes and $104,127.73, plus interest, for Dr. Whelan's unpaid trust fund taxes. The Court further **FINDS** that Defendants liens on the 8 Hylton Road property secured by the deed of trust filed on February 21, 2006, are valid and take priority over the United States' lien in the following amounts: Benjamin Whelan in the amount of $13,394.00; Joseph Whelan in the amount of $12,631.00; and David Whelan in the amount of $15,603.00. The United States' Motion for Summary Judgment [Docket 34] is hereby **GRANTED,** and a Judgment Order and Order of Sale will be filed this day implementing the rulings contained herein.