Staples J.
This is a creditor’s bill to set aside a deed on the ground of fraud. The deed in question conveys all the real estate of the grantor, Thomas L. Moore, in the county of Fauquier, to Thomas L. Henderson, the grantee, in consideration of a debt of fifty dollars due by tbe former to the latter, and for the further consideration of a comfortable support to be furnished the grantor during his life.
As Moore was much embarrassed with debt at the date of this transaction, there is no doubt but that a *933 court of equity would have vacated this deed and held the property liable to the demands of creditors if they had interposed in due time in asserting their claims. Although the law does not restrain the owner in the exercise of a just dominion and control of his estate, it does not pei’mit him to defeat the just claims of creditors, by reservations of benefit to himself inconsistent with those claims.
But the creditors of Moore having failed to assert their demands against the property until Henderson had' made considerable advances for the support .of Moore, in performance of his contract, the question we are to consider is, whether the deed is a valid security to the extent of these advances.
A conveyance of property in consideration of an agreement to support the grantor is not regarded in law as merely voluntary. As it is impossible to foretell how long the grantor may live, or what expense the grantee may necessarily incur in maintaining him, the courts will not undertake to pronounce the consideration inadequate; unless indeed it is manifest that the services to be rendered and the expense to he incurred are grossly disproportionate to the value of the property. Such agreements are therefore treated as founded upon a valuable consideration. And consequently they are only fraudulent so far as the grantee is concerned, when mala fides is justly attributable to him. Ho rule is better settled than that both parties must concur in the fraudulent intent. The fraudulent design of the grantor, if unknown to the grantee, will not infect the latter with a want of good faith. 2 Lomax 420, margin 324.
When there is actual fraud, both parties participating, the deed is utterly void ab initio, and is not permitted to stand as a security for any purpose. The *934 fraud infects the whole transaction. So far has thie doctrine been carried, that in a case before this court, it was held, that a deed could not operate as a security for a valid debt, although the other provisions were forced upon the creditor as a condition of securing-what was actually due him. In no instance will ’the courts afford any indemnity to a pariieeps criminis in case of actual fraud. Bump on Fraudulent Conveyances 572.
When, however, the deed is merely constructively fraudulent, or when it appears that the grantee has acted bona fide, and did not participate in the fraud, the deed is permitted to stand as a security for what is justly due the grantee, or for advances made by him subsequent to its execution. This doctrine is not only just and reasonable in itself, but is supported by abundant authority. As, however, it is strongly controverted by the learned counsel for the appellee, it may not be improper to mention some of the eases which sustain the proposition.
In Albee v. Webster, 16 New Hamp. R. 362, the court say: A sale may be actually fraudulent as to-creditors for want of sufficient consideration, and yet be made good if full consideration be subsequently paid before creditors interfere. So a sale may be fraudulent as to creditors on account of a secret trust accompanying it; but if by a subsequent agreement, before creditors interfere, this secret trust is discharged and the sale is otherwise made valid, the fact that the trust once existed will not operate to vitiate the sale, the fraud being purged.
In Thomas v. Goodwin & als., 12 Mass. R. 140, it was held, that where one summoned as trustee, had received goods of the principal debtor under circumstances indicative of fraud, and which would have *935 fixed him as trustee, but before service of process upon Mm had paid debts of the principal to the amount of the goods received, he was discharged. The case of Lynde et al. v. McGregor, 18 Allen R. 181, is to the same effect; the court regarding the distinction between deeds actually fraudulent and deeds constructively so; and' that the latter maybe made effectual by subsequent advancements.
In Gardner Bank v. Wheaton, 8 Greenl. R. 378, the transaction was held to be fraudulent and void as against creditors; but there being no moral turpitude on the part of the grantee, he might charge upon the estate all his payments and expenses actually made and incurred under the agreement before the conveyance was impeached.
In Bean v. Smith & als., 2 Mason’s R. 252, 296, the language of Mr. Justice Story is very applicable to the case before us. After discussing the facts, he proceeds to say: The next question that arises is, whether the conveyances are to stand as securities for the sums which have been really advanced or paid by them for their father since the execution of these instruments. I agree to the doctrine laid down by Chancellor Kent in Boyd & al. v. Dunlap, 1 John. Ch. R. 478, and Sands v. Codwise, 4 John. R. 536-549, that a deed fraudulent in fact is absolutely void, and is not permitted to stand as a security for any purpose of reimbursement or indemnity; but it is otherwise with a deed obtained under suspicious circumstances, or which is only constructively fraudulent. * * * Again, cases are not unfrequent in equity; where the court upon setting aside a conveyance, has left some benefit to the grantee. But that is done only where there are circumstances which do not immediately affect the party against whom the decree is sought with original *936 and meditated fraud; or if he holds a derivative title, where that title was attained without knowledge of the fraud. There are numerous other cases sustaining this view, which I shall content myself merely with citing. Oriental Bank v. Haskins, 8 Metc. R. 332; Hutchins v. Sprague, 4 New Hamp. R. 469; Hopper, adm’r v. Sisk, 1 Carter’s R. 175. See also Bump on fraudulent Conveyances 574, and the numerous authorities referred to in note. And see Janney v. Barnes et als., 11 Leigh 100.
In the case before us there is not a scintilla of evidence to show that Henderson, at the time of the execution of the deed, had any notice of this claim, or of any indebtedness' on the part of Moore, besides the judgments which were afterwards paid by him. At what time he acquired such notice does not appear. Moore’s liability, as one of the sureties of Marr, was, of course, purely contingent. "When the deed was made no judgment had been rendered against Moore, nor had the extent of his liability been fully ascertained: that, of course, would depend upon circumstances. If the principal was solvent, it would amount to nothing; if insolvent, but the sureties were all responsible, the measure of his liability would be very small. How what is there to show that Henderson had any information whatever upon these subjects? Absolutely nothing. The conduct of the appellee was well calculated to delude him into a feeling of security. The judgment against, Moore was recovered upon notice and motion on the 20th April 1866, but a few weeks after the date of the deed: and yet no execution was issued upon it, and no effort made to enforce it. It does not appear that it was even docketed. The payments of complainant were made in 1867; but no proceedings were instituted to annul the deed until *937 the filing of this bill in March 1869. In the meantime no claim was asserted against Henderson; no notice given him to withhold any advances to Moore, although the deed under which he claimed was duly recorded, and must have been known in the community. During all this time, from March 1866 to March 1869 he is permitted to incur heavy expense in the support of Moore, who was his uncle, without a word of warning or objection from those most interested in looking after this property. In the language of the Supreme court of Pennsylvania, in Pearsoll v. Chapin, 44 Penn. St. R. 1, 14, “ while a creditor does not confirm by doing nothing, and the contract must be a nullity as against his rights, by its performance it may be very far from being a nullity : for if he be not prompt in asserting his rights it may dispose of all the property so that he can never reach it.”
The evidence shows that Henderson paid valid judgments constituting liens on the land to the amount of $687.60; and that he expended about $1,200 in supplying Moore with board and clothing and other things essential to his comfort. There is every reason to believe that Henderson has not derived the slightest advantage from the transaction. He may be guilty of fraud as charged in the bill; but the record does not show it. And I had always supposed the rule well established, that as a charge of fraud is against the presumption of honesty, is an imputation of the gravest character, the courts require to sustain it by proof of the clearest and most satisfactory nature.
It is said, however, that the deed being void at the time of its execution, it is a mere nullity, and cannot be made good by any matter ex post fado. It has been already seen that this rule applies only to conveyances tainted with actual fraud concurred in by both parties. *938 It has no application to cases like the present, in which an innocent purchaser contracts to pay the value of the property in the support of the grantor. Such conyeyances may be voidable at the suit of creditors; but they are not utterly void. The,legal title rests in the grantee by operation of the deed, good against all the world except the creditors; subject to be divested by them if they see fit to impeach the conveyance in due' time.
But the title remains in the grantee until the deed is vacated; and when it is vacated, it is not rendered void db initio; but only from the time of the decree so declaring. Fupp v. Talbird, 1 Hill Ch. R. 99; Backhouse’s adm’r v. Jett’s adm’r, 1 Brock. R. 500; Pearsoll v. Chapin, 44 Penn. St. R. 1, 15.
It is very true that judgment was obtained against Moore before the advances were made by Henderson; but the title was not thereby divested. A judgment lien constituted no interest in the land itself; nor does it confer any right of property therein. The lien operates as a charge upon whatever the debtor possesses at the time; but it cannot operate beyond that. Hntil the deed is vacated the title remains in the-grantee; and there is nothing upon which the judgment can operate. The grantee having purchased the property in consideration of a support furnished the-grantor, every advance by him is a payment of purchase money pro tanto. It is not materially different-from a payment in money to the grantor himself, and its expenditure by him in the purchase of the means of subsistence. If the payment is bona fide made, it will not be affected by the existence of a judgment-lien obtained after the execution of the deed of conveyance. It is competent for the creditor at any time-to interfere, and by proper proceedings, to require the- *939 appropriation of the purchase money, or the estate itself, to the satisfaction of his claim. If he fails to do so until the purchase money is paid, or until the value of the estate is expended in the support of his debtor, it is his folly or his misfortune. The loss can- ’ . . . J . , not be visited upon an innocent purchaser.
It appears from the report of the commissioner, that the real estate embraced in the deed was worth about twenty-one hundred dollars. The amount of Henderson’s account for judgments paid and expenses incurred is about two thousand dollars. This does not include a claim of $250 asserted by him against Moore upon a previous indebtedness, as he maintains. The debt secured by the deed is put down at fifty dollars; and Henderson does not satisfactorily explain the discrepancy. This item of $250 must therefore be rejected from the account. But if it be excluded, the amount actually paid and not controverted in the court below, falls but little short of the value of the property. If we regard Henderson as a bona fide purchaser he is of course entitled to all the rights appertaining to that position. A small excess of the value of the property over the amount of the purchase money will not justify the interference of' the courts. The gravamen of the bill is fraud in the debtor, with the knowledge of the purchaser. It is positively denied in the answer, and is not established by the proofs. The only alternative is the dismissal of the bill. The decree of the Circuit- court must therefore be reversed, and a decree entered dismissing-the bill.
The other judges concurred in the opinion of Staples J.
Decree reversed.