Staples, J.,
delivered the opinion of the court.
Tie deed trust which is the subject of controversy here, was executed by George Thomas for the benefit of ^the appellee, S. Morris Wain, on the 21st of January, 1856, and was admitted to record the same day. It contains the following provision: “To secure and indemnify S. Moms Wain, of the city of Philadelphia, against any and all loss or damage which he may sustain by reason of his acceptance of any draft or drafts, bill or bills which may hereafter be drawn by said Thomas upon the said Wain, which said acceptances the said Wain has agreed to make or come under for the accommodation of said .Thomas.”
Between the date of this deed and the 21st of January, 1861, Wain made advances and assumed liabilities for the benefit of Thomas, which, with the accruing interest, greatly exceed the value of the property conveyed in trust.
The deed is assailed by the appellants, who are creditors of Thomas, upon various grounds, which will now be considered. And first, it is claimed that there was no consideration to support the deed, Wain not having made any advances at the time, nor assumed any obligation to do so. The learned counsel for the appellants concedes that a deed to secure future advances is good provided there is an existing indebtedness. But he insists that where the object is merely to provide for future advances or liabilities, without any other consideration, the deed is void as to the creditors whose debts were contracted at the time. The fact of an existing indebtedness (he claims) is the key to a proper understanding of all the cases which sustain this class of securities. One of the *487 authorities relied on to support this position is an observation of Chancellor Kents in Kendricks v. Robinson, 2 John. Ch. R., 283, 300, where it is said: “ There were large «existing responsibilities affording sufficient aliment to «support the assignment.” It is not very clear what Chancellor Kent meant by this remark. He certainly ■did not mean to say that an existing indebtedness is essential to the validity of a provision to cover a future indebtedness. Elsewhere in the same opinion he declares, “that if there was no existing engagement, or debt whatever, the property might have been assigned in trust to indemnify the parties for advances and responsibilities thereafter to arise. There is no bankrupt system in this country to control the acts of an insolvent merchant, and in the absence of all legal liens he might make such an assignment, provided it bears the mai’ks of a reasonable discretion, and there is perfect candor and honesty in the intention;” and in his commentaries, 4th vol. 175, the same learn ed judge says: “ The principle is that subsequent advances cannot be tacked to a prior mortgage to the prejudice of a bona, fide junior encumbrance, but a mortgage is always good to secure future loans when there is no intervening equity.”
In the case of Commercial Bank v. Cunningham, 24 Pick. R. 270, the supreme court of Massachusetts say, we think it is clear that a mortgage made bona fide for -the purpose of securing debts expected to be contracted in the course of future dealings between the parties, is a just and valid security; and so are the authorities. And in Syle v. Ducomb, 5 Binn. R. 585, 590, Chief Justice 'Tilghman said: “It was asserted by defendant’s counsel, though not much insisted on, that a mortgage intended «as an indemnity against acts to be performed at a subsequent time, ought not to have any effect against third persons. This point was very properly abandoned. *488 There cannot he a more fair, bona fide and valuable consideration than the drawning or endorsing of notes at a future period for the benefit and at the request of the-mortgagors; and nothing is more reasonable than the providing a sufficient indemnity beforehand.” These remarks of the learned chief justice are quoted with approbation by the supreme court of the United States in Lawrence v. Tucker, 23 How. U. S. R. 14, 27. They are fully sustained by the decision in Conrad v. The Atlantic Ins. Comp., 1 Peter’s R. 380, by the opinion of Mr. Justice Story in Leeds v. Cameron, 3 Sum. R. 488, and by a multitude of other cases cited in the opinions-of learned judges, and in the various elementary works-which treat of the subject. See 2 Washburne on Real Property, p. 143; Kramer v. Far. & Mec. Bank 15 Ohio R. 260; see Leading Cases in Eq. vol. 1, pt. 2, 864, 5 and 6; Am. Law Reg. vol. 2, (new series), p. 12; vol. 11, (new series), p. 273.
It is very true that in many of these cases there was an existing indebtedness secured along with the provision for future loans and advances. But that circumstance is not relied on by the judges as being at all necessary to the validity of the deed.
Some of the courts hold that where the mortgage is-made merely to secure future advances without any other-consideration, it may be void as to creditors; but that a deed given bona fide to secure existing liabilities will not be invalidated because it contains a provision for future advances. The good will be separated from the bad, and the deed held valid as to existing debts, and treated as void with respect to the residue; and this is all that is meant when it is said “that if the object of the mortgage be to secure an existing demand,, the addition of a clause protecting future advances would not necessarily avoid the mortgage.” Crane v. Demming, 7 Conn. R. 396. *489 Deeds providing for future liabilities are sustained by the courts because they are regarded as just in themselves, as highly beneficial in trade and commerce, and as founded on a valid consideration. Their validity is too firmly established to be called in question at this day; and the question ought to be considered as settled.
The cases are generally agreed that when the rnortgagee is bound by his contract with the mortgagor to make advances or incur liabilities in the future, he will take precedence of any subsequent encumbrance given by the mortgagor, although he may have had actual notice of such encumbrance at the time the advance ivas made or the liability incurred. But where it is optionary with the mortgagee whether he will make the future advances and endorsements, he will be affected by any subsequent lien or encumbrance which is brought to his knowledge before the advance is made, or the liability assumed. But if without notice of the second encumbrance he acts under his mortgage, he will be protected and take precedence accordingly. See Shirras & als. v. Caig & Mitchell, 7 Cranch R. 34, and the authorities already cited.
"Whether the recording of the second mortgage or encumbrance is of itself notice to the first mortgagee, or whether he can be affected only by express notice, are questions which have given rise to much diversity of opinion. Upon this point the authorities are irreconcilably in conflict. It is not necessary to consider the question now, as the purposes of this case do not require us to decide it'. "We have not considered it necessary to refer particularly to the case of Siter, Price & Co. v. McClanachan et als., 2 Gratt. 280. The case turned upon the effect of a farol contract as against a subsequent bona, jide encumbrance without notice, to hold the trust property as a further security for future advances.
*490 The controversy here is between the appellee claiming under the trust deed and the appellants whose debts were contracted before the date of the deed. Two of the creditors of Thomas, the grantor, recovered judgments against him in the year 1857, to the amount of about six hundred dollars. It does not appear that these judgments were ever docketed. The parties entitled to them do not appear to have taken any active part in asserting their lien in the court below. They have not appealed and are not complaining of the decree of the circuit court. “We must therefore throw those judgments out of view and consider the rights of the appellants only. One of them has no judgment, but is proceeding by foreign attachment. Another recovered judgment against Thomas in 1871, and the third in 1873.
The appellants were therefore creditors at large, having no sort of lien upon the debtor’s property at the time the deed was executed and at the time the advances were made by the appellee. Nothing can be more firmly settled than at common law, apart from the statutes of bankruptcy, a debtor, even in failing circumstances, until his property is specifically bound to the satisfaction of his debts, has an absolute right to dispose of it at his pleasure. He may give undue preference to a part of his creditors, or even to one, and such preference, in the language of Chief Justice Marshall, cannot be, treated as a fraud. See Gordon v. Cannon, 18 Gratt. 387, where the cases are cited by Judge Moncure; 2 Minor’s Institutes, 700. It is very true that the common law rule which denies to the creditor at large any right of interference with his debt- or’s property has been modified by the provision in the Code of 1860, (sec. 2d, page 736,) which authorizes a creditor, before obtaining a judgment or decree, to institute any suit to avoid a gift, conveyance or charge upon *491 tlie estate of his debtor which he might institute after obtaining such judgment or decree. It is manifest that this provision was never designed to give any lien upon the debtor’s property, or to authorize any interference with it until the bill is actually filed. Until that is done the debtor’s control of his estate is precisely what it was at common law.
Although this statute was in force when the deed was executed, no bill was ever filed, no notice given to the appellee of the claims now asserted by the appellants. They were content to lie by saying nothing, giving long indulgence to the debtor until the value of the property is .absorbed by the advances; and now, after the lapse of fifteen years, they ask that the deed be vacated on the ground of fraud and want of consideration. As to the charge of fraud, there is not a scintilla of evidence to sustain it. There is no reason to suppose that the aiipollee had any notice that Thomas was then insolvent, or .even in embarrassed circumstances. The advances were made, and liabilities incurred by him in entire good faith, so far as this record discloses, and there is every reason to believe the proceeds were used by Thomas in the business in which he was engaged. If the money had been loaned to Thomas at the time, no one would question the validity of a deed to secure its repayment. The effect is precisely the same where the advances are made after the execution of the deed and before there are intervening equities attaching in favor of third persons. If the appellants or any other creditors of Thomas desired to put an end to the advances or liabilities for his benefit, all that was necessary was to file a bill in equity under the statute and have the property sold, and the proceeds applied according to the rights of all the parties. If the appellants did not know of the deed of trust, it was their own fault, as the record gave them full notice of the *492 claim of tlie appellee. Tlie case of Henderson v. Hunton, 26 Gratt. 926, is a direct authority upon this point, and indeed upon many of the questions in this case, and we beg to refer to it in connection with the views here presented,
Another objection made to the deed of trust is that it does not specify the amount it was intended to secure, or for which the appellee was bound. There is no doubt that, as a general rule, it would he better for the deed in all cases accurately to define the nature and extent of the obligations for which it is given. But in many eases this is utterly impracticable, as where the deed is to indemnify sureties upon official fiduciary bonds. The debtor who gives a mortgage or deed of trust upon his property to secure creditors is often unable to state the names of those to whom he is indebted, or the amount of such indebtedness; but it has never been held that tlie security was therefore invalid. At all events, it is now well settled that a deed to protect future loans is perfectly valid, although it does not state the amount intended to he secured. Syle v. Ducomb, 5 Binn. R. 585; Moroney’s appeal, 12 Harris R. 372; Craig v. Tappan, 2 Sand. Ch. R. 78; Robinson v. Williams, 22 New York R. 380; Collins v. Carlile, 13 Illi. R. 254. In Shirras v. Caig & Mitchell, 7 Cranch R. 34, Chief Justice Marshall, commenting upon a mortgage given in part to secure future advances, said: “ If upon investigation the real transaction should appear to be fair though somewhat variant from that which was described, it would be unjust and unprecedented to deprive the person claiming under the deed of his real equitable rights unless it were in favor of some one who had been in fact injured and deceived by the misrepresentation.”
In the present case it is perfectly certain that the appellants were not in any manner prejudiced by tire failure to define the limits of the advances or liabilities intended *493 to be secured. They make no such complaint in their bills, original and amended, or in their petition for an appeal, or in the printed brief of their counsel. The sole ground of assault upon the deed in this connection is, that its unlimited and indefinite provisions make it fraudulent and void. It has alreadv been seen that this ground is not tenable.
It is further insisted that the deed was only intended to indemnify S. Morris Wain, whereas the account exhibited by the appellee purports to be due S. Morris Wain & Co., and at all events there is no sufficient proof of the claim asserted under the trust deed.' It is very probable that 8. Morris Wain constituted the firm of 8. Morris Wain & Co., but whether lie did or not, the deed would be sufficient to protect his advances made as a member of that firm. The account is sufficiently proved by the testimony of Thomas, whose deposition was taken and read without objection. When the commissioner’s report was returned sustaining the appellee’s claim, the appellants excepted to it upon the ground that the deed is void as to creditors. They did not except because the report was not sustained by the evidence. It is, of course, too late to make the objection for the first time in an appellate court.
Upon the whole, we are of opinion there is no error in the decree, and that the same should be affirmed.
Decree affirmed.