# WHEELING.

## BALLARD *v.* CHEWNING *et al.*,

## GEISER MANUFACTURING CO. *v.* SAME.

### Decided June 13, 1901.

1. DEED—*Fraudulent per se—Creditors.*

   That a court may pronounce a deed fraudulent *per se*, the intent to hinder, delay and defraud the creditors of the grantor must appear on the face of the instrument, without reference to extrinsic evidence.   (p. 512).

2. TRUST DEED—*Fraud Must Appear on Face.*

   A deed of trust to be valid need not be so certain and definite in its terms as to exclude the possibility of the existence of a secret reservation in favor of the grantor, fraudulent and inconsistent with the avowed purposes of the parties. To render the deed *per se* fraudulent such reservation must be apparent on the face of the instrument.   (p. 513).

3. DECREE—*Reason For Need Not Appear.*

   It is not necessary to assign in a decree any reason for the decision, and, if a decree is substantially right, it should be affirmed, although the court below may have given an insufficient reason for its judgment.   (p. 514).

4. EQUITY—*Decree—Reason Given.*

   When in a suit in equity to set aside a deed of trust as fraudulent, the decree, settling the principles of the cause, recites that the court found the deed to be fraudulent on its face and did not consider certain parts of the record, including the depositions, such recital is held to be merely the assignment of a reason for the decision, and, in the appellate court, the whole record will be considered in determining whether the decree is erroneous.   (p. 515).

5. CREDITORS—*Presumption of Fraud.*

   A deed of trust, executed by one brother for the use of another and purporting to secure to the latter a debt of two thousand seven hundred and fifty dollars upon partially encumbered property worth not over seven hundred dollars, and the latter claims to have loaned the former parts of said sum at different times, knowing what property he had, and there are other circumstances as well as conduct casting suspicion upon the transaction, will be presumed and held to be fraudulent as to the creditors of the grantor.   (p. 519).

Appeal from Circuit Court, Monroe County.

Bills by Baldwin Ballard against W. S. Chewning and others and by the Geiser Manufacturing Company against the same defendants. Decree for complainants, and defendants appeal.

*Affirmed.*

HENSON & MASON, for appellants.

LOGAN & PATTON and JOHN OSBORNE, for appellees.

POFFENBARGER, JUDGE:

This is a chancery suit, brought in the circuit court of Monroe County, in July, 1897, by Baldwin Ballard against J. W. Chewning, L. B. Dunn, trustee, and W. S. Chewning, to set aside, as fraudulent and as having been made without consideration, a deed of trust, dated May 31, 1897, and executed by said J. W. Chewning, conveying practically all of his property, consisting of an undivided one-half of a tract of land, containing one hundred and twenty-five acres; a tract, containing seven acres; a tract, containing twenty-six and one half acres; a tract, containing one hundred and fifteen poles; one mare; one horse; one mowing machine; and one hay-rake, to the said L. B. Dunn upon the following trust and conditions:

"In trust to secure W. S. Chewning in a debt of the amount ($2,750.00) twenty-seven hundred and fifty dollars. Now if the said debt be paid when due this deed to be then null and void, otherwise to remain in full force and effect, and said trustee, (or if he refuse to serve, the sheriff is to act as said trustee), at the suggestion of said W. S. Chewning made at any time after said debt be due and unpaid, shall proceed as the law directs to satisfy said debt, or any part thereof, that may be unpaid with its secured interest, out of the proceeds of said property hereby conveyed, said property to be sold, as to the personal property for cash in hand on the premises of said J. W. Chewning, as to the real estate it shall be sold on the premises, on equal payments of one, two and three years."

In his bill the plaintiff sets up a judgment for the sum of two hundred and ninety-four dollars and eighty-eight cents and two dollars and seventy-five cents costs, recovered by him against said J. W. Chewning, June 31, 1897, upon a debt, contracted a long time before the execution of said deed of trust, alleges that said deed was executed for no consideration deemed valuable in

law; that W. S. Chewning is a brother of J. W. Chewning; that J. W. Chewning does not and did not at the time of the execution of said deed of trust owe said W. S. Chewning anything; that W. S. Chewing was never financially able to advance such a sum of money to said J. W. Chewing or to allow anyone to become indebted to him for such an amount and did not loan the money mentioned in the deed of trust; and that the deed of trust was executed fraudulently and for the purpose of hindering, delaying and defrauding the creditors of said J. W. Chewning in the collection of their debts and expressly for the purpose of hindering, delaying and defrauding the plaintiff in the collection of his debt.

At August rules, 1897, the Geiser Manufacturing Company filed its bill in said court against the same parties to set aside said deed of trust as fraudulent, and alleges that the defendant J. W. Chewning is indebted to it in the sum of ——— dollars, evidenced by two notes for two hundred and twenty dollars each and one for two hundred and ten dollars, dated July 29, 1895, due one day after date, and bearing interest, respectively, from December 1, 1895, December 1, 1896, and December 1, 1897. The notes are filed with the bill as exhibits.

W. S. Chewning answered the bill of Baldwin Ballard and demurred to it also. He denies knowledge of any fraud in the transaction on the part of J. W. Chewning and also that there was any fraud in the transaction, and alleges that on September 21, 1895, J. W. Chewning wrote him a letter requesting a loan of four hundred dollars or five hundred dollars, and offered to secure the payment of the money by a deed of trust on his land; that in response to this application he loaned him four hundred and fifty dollars, October 18, 1895, taking his note therefor; that, upon a like application, he loaned him five hundred and fifty dollars, March 1, 1896, taking his note therefor; and on the 15th day of December, 1896, six hundred and fifty dollars, taking his note therefor; that when the last of said loans was made J. W. Chewning promised to secure the money thus loaned by a deed of trust, but the matter was delayed until May 31, 1897; that then said J. W. Chewning wanted to borrow one thousand dollars more and a settlement was made and said amount loaned him; and that at the time of said last loan and settlement the deed of trust was executed. With this answer there are filed as

exhibits a letter from J. W. Chewning, requesting said first loan, and the three notes, mentioned in said answer, all bearing interest and due one day after date. Nothing appears in the answer to show how the debt of two thousand seven hundred and fifty dollars secured by the deed of trust is evidenced or when it will be due and payable.

J. W. Chewning also answered the bill, denying that he is indebted to the plaintiff, that he executed the said deed of trust for the purpose of hindering, delaying or defrauding his creditors or any of them, and that he is insolvent, and averring that the debt mentioned in the deed of trust is *bona fide* and that he has sufficient property to more than pay all of his indebtedness.

W. S. Chewning demurred to, and answered, the bill of the Geiser Manufacturing Company also, setting up the same defense as that made to the other bill. J. W. Chewning and L. B. Dunn, trustee, also answered the bill in said second suit, and there were general replications to all of said answers.

In an answer to interrogatories, J. W. Chewning shows what disposition he made of the money he claims to have borrowed from W. S. Chewning and files receipts and vouchers for most of the items. In this answer he places the value of his property at three thousand dollars, although he admits that he paid only three hundred and fifty dollars for his interest in the one hundred and twenty-five acre tract, ninety-three dollars for the seven acre tract, three hundred and sixty dollars for the twenty-six acre tract, and twenty-three dollars for the one hundred and fifteen pole tract. He thinks, however, he "got a bargain in his land purchases." Only seventy-two dollars has been paid on the twenty-six acre tract and nothing on the one hundred and fifteen poles tract. There are references in the record to the building of a house on the property, but its value does not appear. Depositions were taken and filed for both plaintiffs and defendants.

On the 23rd day of March, 1899, both causes were heard together. The decree entered is in part as follows: "The causes came on this 23d day of March, 1899, to be heard upon the plaintiff's bill, and exhibits filed therewith. The separate demurrer and answers of W. S. Chewning to said bills, the joinder of the plaintiff in said demurrer and general replication to said answers, the separate answers of J. W.

Chewning to said bills and plaintiff's replication thereto upon the answer of L. B. Dunn, trustee, upon the interrogatories filed by the plaintiffs to J. W. Chewning; upon the answer and exhibits therewith of J. W. Chewning thereto and the objections of W. S. Chewning to the reading of said interrogatories as endorsed against him upon the depositions of witnesses taken on behalf of the plaintiff and upon the deposition of witness taken on behalf of the defendant W. S. Chewing and was argued by counsel. On consideration whereof the demurrer is overruled, the court without passing on the objections of W. S. Chewning to the reading of the answers, interrogatories and answers thereto and without passing on the evidence of the witnesses examined in the cause, is of the opinion that the deed of trust executed by J. W. Chewning to L. B. Dunn, trustee, is void on its face, it is therefore adjudged, ordered and decreed that said deed is fraudulent *per se* on the face thereof and is void and is hereby annulled and set aside." It is further decreed that the plaintiffs have liens upon the property mentioned in the trust deed for the amounts of their respective claims, that the cause be referred to a commissioner, and the personal property be sold in order to prevent its waste, the proceeds thereof to be held until the further order of the court.

From this decree, the defendant W. S. Chewning appealed. In taking his transcript of the record, he omitted the depositions, but they, with all the original papers in the two causes, have been brought up to this Court by *certiorari.*

The only question extensively argued is whether or not the deed of trust is fraudulent *per se,* the court below having recited in its decree that in the rendition thereof the depositions of the witnesses were not considered and said deed was held to be fraudulent on its face. The appellant insists that, as the court below did not inquire whether said deed of trust is fraudulent in fact, it would be improper for this Court to do so upon appeal from that decree. In this connection, he contends that the decree, though settling the principles of the cause and, therefore, appealable, is so far interlocutory that this Court can only consider such parts of the record as the chancellor has acted upon, citing *Madden* v. *Madden's Ex'r.,* 2 Leigh. 380.

In determining whether the deed is fraudulent on its face, we

can look to the deed alone. It must be decided upon an inspection of that instrument. Extrinsic evidence can not be resorted to. *Landerman* v. *Wilson et als.,* 29 W. Va. 703. The deed of trust involved here fails to set forth who owes the debt, purporting to be secured by it, how the same is evidenced, when it will become due and whether it bears interest. It provides for sale of the property at the suggestion of the creditor at any time after the debt shall become due and payable and fixes the terms of sale. Unless made with a fraudulent design and there was a purpose in omitting the name of the debtor and the date of the maturity of the debt, it must be said that the instrument is unskillfully drawn. This cannot be resolved from an inspection of the deed, and in this connection it is wholly immaterial from what that awkward character of the instrument results, since the real question to be determined is the legal effect of its provisions without regard to the actual intent of the parties in executing it, which properly belongs to the question of fraud in fact. The principles underlying the decisions, holding deeds to be fraudulent *per se,* are well and clearly stated in Hogg's Equity Prin., s. 189, as follows: "They (the deeds) contain such provisions and stipulations as to property that is perishable or readily consumable, as a stock of goods, as to enable the grantor to remain in possession and control of the property encumbered with the trust, and to indefinitely postpone the execution of the same, and the subjection of the property therein embraced to the payment of his debts. In fact, it is that the provisions of the conveyance are in contravention of the avowed purposes of the grantor in executing the same." In the same section, it is further said: "That a court may pronounce a deed fraudulent *per se,* the intent to hinder, delay or defraud the creditors must appear on the face of the instrument. This must appear from an inspection of the deed or other writing, without reference to extrinsic evidence." While this deed is silent as to the date at which the debt will become due and by its terms no sale is to be made until after default in payment and then only upon request of the trust creditor, it does not affirmatively appear from its face that such sale might or could be unreasonably delayed or entirely prevented. Nobody, save the debtor and creditor, knows when sale can be made under the deed, but when disclosed the time may be found to be reasonable and just to all

parties and not such as to indicate any fraudulent intent, or be inconsistent with the terms of the deed. On the other hand, the date of maturity may turn out to be so far in the future as to clearly indicate collusion between the parties to it to defeat the rights of creditors and not the existence of a *bona fide* debt and security for the same. However, no case is recalled in which the court has gone to the extent of holding that a deed of trust, to be valid on its face, must be so certain and definite in its terms as to exclude the existence of a secret reservation in favor of the grantor, fraudulent and inconsistent with the terms of the instrument, and not apparent on the face thereof. In *Livesay's Ex'r et als.* v. *Beard et als.,* 22 W. Va. 585; *Claflin* v. *Foley,* 22 W. Va. 434; *Landerman* v. *Wilson,* 29 W. Va. 703, and other cases in which this Court has held deeds fraudulent on their faces, the evidence of the fraud clearly appeared in the instruments. The terms of the deed in this case are not necessarily inconsistent with good faith or the ostensible purpose set forth in it. It is, therefore, not fraudulent *per se.*

It remains now to say whether, upon this record, the question of fraud in fact can be considered, and, if so, whether it exists and the deed of trust is, for that reason, void. The record shows that, when the decree appealed from was entered, the cause was ready for hearing and actually came on to be heard upon all the pleadings, evidence and papers filed in the case, as shown by the quotation herein made from the decree. By the decree, the deed of trust is declared void, and annulled and set aside. The effect of the decree is general, covering the whole issue as to the *bona fides* of the deed, and granting the relief asked for in the bill. It can have but one effect upon the rights of the parties litigant, however the lower court may have reached its decision. When it declared the trust deed fraudulent, deprived W. S. Chewning of the rights he claimed under it, and declared the existence of liens in favor of the plaintiffs upon the prpoerty, the court had before it the entire record. As to the valadity of the deed, its decree is co-extensive with the entire record in legal effect. It must be deemed to have passed upon the whole record, therefore, whether, in fact, it did so or not. It was not necessary to assign in the decree any reason for the decision and it is well settled that, if a decree is substantially right, it ought to be affirmed, although the inferior court may have given an erro-

neous reason for its judgment. *Newell* v. *Wood,* 1 Munf. 555; *Easley* v. *Craddock,* 4 Rand. 423; *Silsby* v. *Foote,* 14 How. (U. S.) 219. The decree recites that the court found the deed to be fraudulent *per se* and also that the court did not pass upon certain parts of the record. This can only mean that *because* the deed was found to be fraudulent *per se,* the evidence was not considered, and amounts to nothing more than the assignment of a reason for the judgment of the court. The only question before this Court is whether the decree is right or wrong, whether it shall be affirmed or reversed, and in determining that the entire record may be considered, as in all other cases.

The Chewnings are brothers. J. W. Chewning evidently came to Monroe County from Giles County, Virginia, but just when does not appear. One witness testifies that he came to his present place of residence in 1896. In January, 1898, he exempted his personal property from execution at a valuation of sixty-three dollars and fifty cents. A witness familiar with his real estate values it at five hundred and fifty dollars. W. S. Chewning is a close, saving and enterprising batchelor, forty years old, living with his mother and sister at Narrows, Giles County, Virginia, in rented property, consisting of a house and two acres of land, the rental value of which is placed at from twenty-five to forty dollars per year, has worked for himself more or less since he was eighteen years old, raising melons, wheat and other farm products on rented land, was railroad watchman for four years and eight months at one dollar and one dollar and twenty-five cents per day, worked at station awhile at eighteen dollars per month, has made some money trading, especially in watches and jewelry, keeps some horses and had two hired out for several months at one dollar per day each; liverymen often sends men to him to hire horses at that rate; had team hauling logs for two years, always kept from three to six cows, sold milk and butter and raised calves which ranged on mountain without cost, keeps two brood mares and raises colts and turns them into money, never gave in any money for taxation because advised that it was not taxable unless loaned at interest to a bank or individual in Virginia, and, after making first three loans to his brother, went to Monroe County at his brother's request and figured up his indebtedness to him at one thousand seven hundred and fifty-four dollars and twenty-three cents,

including interest, and let him have the difference between that sum and two thousand seven hundred and fifty dollars, taking the deed of trust in question and believing it to be a sound and safe investment. Such is his testimony. His good character, thrift, industry and inclination to save his money are vouched for by other witnesses, though there is no evidence aside from his own statements of his ever having had any money in excess of his immediate necessities.

In answer to interrogatories, J. W. Chewning says he used the money he claims to have borrowed from his brother as follows: Of the four hundred and fifty dollars of October 1, 1895, he paid John A. McKenzie three hundred and seevnty-five dollars, for which no receipt is among the papers; C. Broyles, thirty-four dollars and thirty cents, evidenced by note dated December 12, 1895, payable one day after date, and the date has the appearance of having been altered; R. H. Arnot, ten dollar note, due one month after date, date torn off and "1895" written on margin in pencil; T. R. Mitchell, fifty-nine dollars and fifty cents, receipt, dated November 30, 1895, reciting that it is payment on produce bought, October 26, 1894, and date has evidently been altered; J. W. McCreer, eleven dollar note, dated November 12, 1895, and due June 1, 1896, eight months after the money was borrowed; and J. H. Comer, thirty dollars and fifty-four cents, due bill for produce, date torn off, but unsigned endorsement in pencil on back, "Paid November 2, 1895." Of the five hundred and fifty dollars of March 1, 1896, he claims to have paid W. C. Ballard twenty dollars, due bill, dated November 20, 1896, more than eight months after the money was borrowed; Warder, Bushnell & Glessner Co., twenty-six dollars and fifty cents, note dated July 11, 1895, due October 1, 1896, and paid October 8, 1896, more than seven months after the money was borrowed; J. A. Miller, twenty-eight dollars and twenty-nine cents, receipt, dated June 30, 1896, date apparently altered; Augustus Broyles, five dollars, receipt dated May 1, 1896, date apparently altered; and F. J. Young, four hundred and twenty-five dollars, receipt dated May 10, 1896, over two months after money was borrowed, and reciting that it is the first payment on a four hundred and fifty dollar bond. Of the six hundred and fifty dollars of December 15, 1896, he claims to have paid S. F. Porterfield four hundred and fifty dollars, receipt dated Decem-

ber 18, 1896, stating said amount to be credited on a bond; Allen Caperton, twenty-four dollars and fifty-nine cents, balance on note, paid December 28, 1896; Augustus Broyles, twenty-four dollars and twenty-two cents, memorandum of butter and eggs, below which is written in different and older pencil, "This December 20, 1896, Due Augustus Broyles, J. W. Chewning," showing that it was given after the 'money was borrowed. Of the nine hundred and ninety-five dollars and seventy-seven cents of May 31, 1897, he claims to have paid S. F. Potterfield, four hundred dollars, receipt dated October 7, 1897, and three hundred and seventy-five dollars, receipt dated October 30, 1897, both nearly five months after the money was borrowed to pay them with, and stating the payments to be on bonds, held by Porterfield; Rowan & Boggess, ten dollars, due bill, dated August 5, 1897; John A. Brown, ten dollars, receipt dated June 28, 1897. There is also a receipt from Hoover & Garvin, for ninety-three dollars and nineteen cents, dated February 14, 1898. He mentions several other payments for which no receipt appears. This is by no means a satisfactory showing. It discloses many bald discrepancies and suspicious circumstances, as will be seen from a close inspection of it. It fails to strengthen the position of this respondent and actually weakens it by giving a manifestly false explanation, thereby tacitly admitting inability to give a true one consistent with his representations in the matter.

While the declarations of the grantor, made subsequent to the conveyance, are not admitted to affect the title of the grantee, *Fry* v. *Casto,* 33 W. Va. 449, the inability or failure of the grantor to satisfactorily account for the money he claims to have received in consequence of the conveyance, when put upon oath as to the matter, is a circumstance from which fraud on his part in the transaction may be presumed. *Bowen* v. *Johnson,* 107 U. S. 251; *Clarke* v. *Van Riemsdyk,* 9 Cranch 153; *Clements* v. *Moore,* 6 Wall. 299; *Burke* v. *Burke,* 34 Mich. 451.

Proceeding now to consider the situation of W. S. Chewning, it is to be remembered that he is a brother of J. W. Chewning, and "A transaction with a near relative is open to more suspicion than with a stranger, because it is more likely to be intended, not as a real transaction, but as a feigned and collusive arrangement by which it is secretly understood that the donee

shall hold the property against the claims of creditors and still let the debtor receive the benefit from it." 8 Am. & Eng. Ency. Law, 784; May Fraud. Conv. 236. That this principle is recognized in this State appears from the cases of *Watkins* v. *Wortman,* 19 W. Va. 78; *Knight* v. *Capito,* 23 W. Va. 639; *Reilly* v. *Barr,* 34 W. Va. 95; *Spence* v. *Smith,* 34 W. Va. 696; *Bartlett* v. *Cleavinger,* 35 W. Va. 719; *Hutchinson* v. *Boltz,* 35 W. Va. 754, and others. Before loaning his brother any money, if he did loan it, he undoubtedly knew what property he had, probably not over seven hundred dollars worth, part of which was encumbered, for he went to his brother's place when he claims to have loaned him the first four hundred and fifty dollars, which is probably all any prudent man would have loaned on it. With this knowledge, he says he then loaned him four hundred and fifty dollars, then five hundred and fifty dollars, then six hundred and fifty dollars, and then nine hundred and ninety-five dollars and seventy-seven cents. He must have known before the last two loans were made that his brother was insolvent by reason of his indebtedness to him alone. This is not in keeping with his reputation for prudence, caution and closeness in a financial sense. It is irreconcilable with the principles of ordinary business transactions. There is no direct evidence that W. S. Chewning ever had so much money as he claims to have loaned his brother, although he undertakes to show his financial ability in the manner hereinbefore set forth. Nobody testifies to having seen it or positively knowing of its existence. One witness says Chewning told him at one time that he had about one thousand dollars he could invest in building and loan association stock but preferred not to do so. It is claimed to be the accumulation of many years, but it does not appear that he has ever had any business transaction in which such an amount of money could have been used, nor that he had ever loaned, deposited or been taxed with any considerable sum of money. From his personal history and transactions as already detailed, the Court could not presume that he possessed the amount named. The natural inference, if any, would be the contrary. Another suspicious circumstance is the refusal of W. S. Chewning, when brought into court upon a bill charging him with fraud, to disclose how this two thousand seven hundred dollars is evidenced and when it will become due. Upon this question, both his

answer and deposition are silent. This borders very closely upon an admission that this most important fact, upon which depends the time when sale can be made, was intentionally and fraudulently omitted from the deed of trust. The omission was specifically charged in the bill of the Geiser Manufacturing Company to be intentional and fraudulent. The fact is peculiarly within the knowledge of the respondent and probably known to none save himself and his brother. In an answer where fraud is denied, the denial should be full and specific. 8 Am. & Eng. Ency. Law, 777, note, and cases there cited; Wait on Fraud. Conv., s. 162. This omission from the deed of trust did not make it *per se* fraudulent, because it was not necessarily evidence of fraud. From the failure to supply it in the answer or evidence, it is fair to presume that the omission was for a fraudulent purpose. It is not desirable or necessary, however, to hold positively that a presumption of fraud arises from such an omission, and it will be simply considered in connection with other suspicious circumstances to which attention has been directed.

The evidence of fraud in the case is circumstantial, but this Court has held that "Where a deed is attacked by the creditors of the grantor as fraudulent, in ascertaining whether the fraudulent intent existed in the minds of the grantor and grantee, the court will look into the circumstances surrounding the transaction, circumstantial evidence being not only sufficient to establish such fraud, but, on account of the secrecy of such transactions, is often the only evidence that can be obtained." *Bartlett* v. *Cleavinger,* 35 W. Va. 719. The rule as to proof of fraud is stated in 8 Am. & Eng. Ency. Law, 654, as follows: "It is not always necessary, however, that direct affirmative or positive proof of fraud be given. It may be and usually is proved by circumstantial or presumptive evidence. If the evidence is sufficient to satisy the mind and conscience of the existence of the fraud, it will be sufficient, although it does not lead to a conviction of absolute certainty. The fraud need not be proved beyond a reasonable doubt."

The conclusion upon this state of the law and the facts in the case is that there is no error in the decree of said circuit court in this cause from which the appeal was taken, and it is, therefore, affirmed.

*Affirmed.*